WALSH v TAYLOR

Docket No. 246059. Submitted June 2, 2004, at Detroit. Decided September 23, 2004, at 9:00 A.M.

Stanley T. Walsh brought an action in the Macomb Circuit Court alleging that Robert Taylor and Richard Margosian, who were law enforcement officers engaged in an undercover drug operation, falsely arrested and imprisoned him, maliciously prosecuted him on a charge of solicitation to purchase illegal drugs, intentionally inflicted emotional stress on him by their conduct, and violated 42 USC 1983. Taylor moved for summary disposition, claiming governmental immunity, MCL 691.1407, and that he had probable cause for swearing to a request for warrant authorization with respect to the plaintiff's alleged solicitation for the purchase of cocaine. The court, Mary A. Chrzanowski, J., without specifying whether it was ruling on the motion under MCR 2.116(C)(7) or 2.116(C)(10), held that there were genuine issues of material fact precluding summary disposition. Taylor appealed as of right.

The Court of Appeals *held*:

1. But for the requirement in MCR 7.215(J) that the Court must follow the prior binding decision in *Newton v State Police*, 263 Mich 251 (2004), the Court would find that it has jurisdiction to consider on appeal all claims incident to this action upon the defendant's appeal as of right. However, *Newton* requires that the Court treat the claims in this appeal as on leave granted. The rationale for the disagreement with the *Newton* decision is that when a court denies a governmental party's motion for summary disposition in which it claims governmental immunity, the practical effect is to deny governmental immunity. Such an order is a "final" order from which an aggrieved party may appeal as of right. MCR 7.202(6)(a)(v); MCR 7.203(A).

2. The plaintiff has failed to make a proper showing of false arrest. The deposition testimony and documentary evidence establish that Taylor did not participate in the plaintiff's arrest because he was monitoring undercover drug solicitation operations from several blocks away at the time that two other officers encountered the plaintiff and subsequently arrested him.

3. Similarly, the plaintiff failed to establish that he was falsely

imprisoned by Taylor. The plaintiff did not know Taylor, had never seen him, and could not explain what involvement Taylor had in the case. To the extent that Taylor, under oath, sought a request for warrant authorization and that this conduct lengthened the time during which the plaintiff was detained in jail, probable cause supported Taylor's presentation of the request for warrant authorization. Under the totality of the circumstances, Taylor had probable cause to swear to the request for warrant authorization against plaintiff on the basis of the presumptively reliable information provided to him by the undercover law enforcement officers because the facts relayed by the undercover officers to Taylor established probable cause that the plaintiff solicited drugs, the allegations in the request for warrant authorization consisted of the observations by the undercover officers, and Taylor affirmed that he received relevant information from those officers when he swore to the warrant authorization.

4. The plaintiff failed to establish his claim of malicious prosecution against Taylor. There is no evidence that Taylor swore to the request for warrant authorization against the plaintiff with malice or for a purpose other than bringing an offender to justice. Moreover, Taylor had probable cause to believe that the plaintiff committed the crime as alleged in the request for warrant authorization.

5. The plaintiff's claim of intentional infliction of emotional distress fails because he does not allege with specificity any actions by Taylor with respect to intent or recklessness. Further, the evidence establishes that Taylor sought the request for warrant authorization on the basis of presumptively credible information supplied by fellow law enforcement officers, which amounted to probable cause for the plaintiff's arrest.

6. Taylor is entitled to qualified immunity from plaintiff's allegations of unlawful arrest and supervisory liability brought under 42 USC 1983. The unrebutted deposition testimony of the plaintiff, Taylor, and other law enforcement officers establishes that Taylor was not involved in the plaintiff's arrest, that Taylor had probable cause to swear to the request for warrant authorization, and that Taylor was not the supervisor of the other law enforcement officers that arrested the plaintiff.

Reversed.

BORRELLO, J., dissenting, stated that the trial court correctly ruled that there are genuine issues of material fact that should proceed to the trier of fact, and that the majority enlarges the scope of this Court's jurisdiction by eliminating the distinctions between a motion brought under MCR 2.116(C)(7) and one under

MCR 2.117(C)(10). Where the trial court denied Taylor's motion on the basis of its finding of genuine issues of material fact regarding whether Taylor was entitled to governmental immunity, that is a determination under MCR 2.117(C)(10). Taylor cannot file a claim of appeal as of right from such an order because it is not a final order under MCR 7.202(6)(a)(v) and 7.203(A)(1). Rather, Taylor is required to file an application for leave to appeal.

*The F.L. Gibson Group, P.C.* (by *Fred L. Gibson*), for the plaintiff.

*Clark Hill PLC* (by *Neil H. Goodman*) for Robert Taylor.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *James T. Farrell*, Assistant Attorney General, for Richard Margosian.

Before: SAAD, P.J., and TALBOT and BORRELLO, JJ.

TALBOT, J. This case arises from the underlying arrest and detention of plaintiff Stanley T. Walsh by defendant law enforcement officers Robert Taylor and Richard Margosian on a charge that plaintiff solicited the purchase of illegal drugs. A magistrate later dismissed the charge. Defendant Taylor appeals as of right the circuit court's order denying his motion for summary disposition premised on governmental immunity. We reverse.

I

Taylor first argues that the circuit court erred by denying his motion for summary disposition of plaintiff's state law tort claims of false arrest and imprisonment, malicious prosecution, and intentional infliction of emotional distress. He asserts that the undisputed facts demonstrated that he had probable cause for

swearing to the request for warrant authorization (RWA) allegation that plaintiff solicited cocaine.

We review de novo a circuit court's summary disposition ruling. *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). Taylor moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). Although Taylor sought summary disposition, in part, on the basis of governmental immunity, the immunity provided by MCL 691.1407(2) does not apply to an intentional tort by an individual governmental employee, such as is alleged by plaintiff in this case. *Lavey v Mills*, 248 Mich App 244, 257; 639 NW2d 261 (2001); *Sudul v Hamtramck*, 221 Mich App 455, 458, 481, 486-488; 562 NW2d 478 (1997). The trial court did not specify the basis for its ruling, but apparently denied Taylor's motion pursuant to MCR 2.116(C)(10), which tests the factual support of a plaintiff's claim.[1] *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. *Spiek, supra* at 337.

The parties do not dispute jurisdiction in this case. We are compelled to address it, however, in light of *Newton v State Police,* 263 Mich App 251; 688 NW2d 94 (2004), in which a panel of this Court concluded that a party cannot claim an appeal as of right where, although a party asserts governmental immunity, the trial court grants summary disposition under MCR 2.116(C)(10). We disagree with that part of the decision

---

[1] The circuit court found that questions of fact existed concerning all of plaintiff's claims.

in *Newton,* and identify a conflict on the question of jurisdiction under MCR 7.202(6) and MCR 7.203(A)(1).[2] MCR 7.215(J).

The question of jurisdiction is always within the scope of this Court's review, *In re Complaint of Knox,* 255 Mich App 454, 457; 660 NW2d 777 (2003); MCR 7.216(A)(10). The jurisdiction of the Court of Appeals is provided by law, and its practice and procedure are prescribed by the court rules and our Supreme Court. Const 1963, art 6, § 10. See MCR 7.202(6) and MCR 7.203. Unlike that of our Supreme Court or the circuit court, the jurisdiction of this Court is "entirely statutory," *People v Milton,* 393 Mich 234, 245; 224 NW2d 266 (1974), and is generally limited to final judgments and orders. MCL 600.308.

In its exercise of prescribing this Court's practice and procedure, our Supreme Court has determined that a "final" judgment or order includes an appeal from an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee. MCR 7.202(6)(a)(v). The question of appellate review under MCR 7.202(6)(a)(v) is a matter of procedure.[3] Const 1963, art 6, § 10.

---

[2] We note that the court rule contains an error. MCR 7.203 states that this Court has jurisdiction over final judgments as defined in MCR 7.202(7). In May 2004, MCR 7.202 was renumbered and MCR 7.202(7) was changed to MCR 7.202(6), but MCR 7.203 has not yet been revised to reflect that change. The opinion in *Newton* does not reflect these changes.

[3] Moreover, application of the court rule does not raise a question of subject-matter jurisdiction; if it did, we could not exercise our discretion to accept a case by granting leave on trial court orders that cannot be appealed as of right. MCR 7.205(D)(3). Subject-matter jurisdiction involves " 'the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the

As a question of procedure, then, the question is generally whether a party has an appeal as of right when only claims of intentional tort survive. The panel in *Newton* concluded that there is no appeal as of right in that situation. We disagree and, except that we are bound by this Court's prior decision, MCR 7.215(J), would conclude that, as a general rule, whenever a trial court rules on a motion for summary disposition where there is a governmental party acting under color of authority, the order may be appealed as of right because the cause of action falls within the scope of MCR 7.202(6)(a)(v).

When construing a court rule, the rules of statutory construction apply, and common words must be understood to have their plain, ordinary meaning. If a court rule is unambiguous, it must be enforced without further judicial construction. *In re KH,* 469 Mich 621, 628; 677 NW2d 800 (2004).

Here, it is undisputed that all of plaintiff's allegations involved the conduct of on-duty police officers "acting under color of law." Plaintiff alleged that Taylor committed intentional torts in his capacity as a police lieutenant with the narcotics unit, COMET.[4] As noted previously, the intentional torts of a governmental employee are not entitled to immunity. *Lavey, supra* at 257. Here, although plaintiff's complaint alleged intentional torts, Taylor asserted that the case was barred because of governmental immunity.

The court rules limit an appeal from an order denying governmental immunity "to the portion of the order

particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial.' " *Joy v Two-Bit Corp,* 287 Mich 244, 253-254; 283 NW 45 (1938), quoting *Richardson v Ruddy,* 15 Idaho 488; 98 P 842 (1908).

[4] County of Macomb (Narcotics) Enforcement Team.

with respect to which there is an appeal of right." MCR 7.203(A)(1). MCL 691.1407(2), provides that governmental employees are immune from tort liability if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's . . . [or] employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

It is important to note that the purpose of governmental immunity is to protect the governmental body, not only from liability, but from the trial itself. See *Mitchell v Forsyth,* 472 US 511; 105 S Ct 2806; 86 L Ed 2d 411 (1985). It is axiomatic that, in any dispute where the governmental body claims an immunity defense, the plaintiff will allege that their case is outside the scope of immunity. Thus, most orders denying governmental immunity will arise, as did the one here, as a result of a plaintiff's allegations in avoidance of immunity. However, a plaintiff's mere allegations are not enough to avoid the broad sweep of immunity. If a trial court must simply let a case go forward whenever the plaintiff claims that intentional torts are involved, immunity would be illusory. Instead, we believe that whenever a plaintiff alleges facts in avoidance of immunity, or when a defendant claims that immunity applies, the trial court should be obligated to evaluate the specific conduct alleged to determine whether a valid exception exists. The potential of immunity is at the core of virtually any case involving a governmental

party. Thus, contrary to the reasoning in *Newton,* regardless of the specific basis of the trial court's ruling on a motion for summary disposition, whenever the effect is to deny a defendant's claim of immunity, the trial court's decision is, in fact, "an order denying governmental immunity." Logic dictates that such a determination be reviewable under MCR 7.203(A). MCR 7.202(6)(a)(v). When the trial court denied Taylor's motion in this case, the practical effect of the court's ruling was to deny Taylor's claim of governmental immunity.

The governmental immunity act, MCL 691.1401 *et seq.*, "takes great pains to protect governmental employees to enable them to enjoy a certain degree of security as they go about performing their jobs." *Tarlea v Crabtree,* 263 Mich App 80; 687 NW2d 333 (2004) (citations omitted). As noted, the purpose behind the court rule that permits a governmental body to appeal before there is a final judgment is to protect the defendant, not only from liability, but from the trial itself. *Mitchell, supra* at 511. We do not believe that our Supreme Court intended the court rule to be read so restrictively that governmental bodies would be forced through discovery and trial whenever their motion for dismissal is denied on grounds other than MCR 2.116(C)(7), merely because the plaintiff contends that the governmental agency is not immune. If we were writing on a blank slate, except for *Newton* we would find that a defendant who claims immunity may challenge, as of right, a plaintiff's alleged exception to governmental immunity when those allegations result in an order denying governmental immunity. MCR 7.203(A). Otherwise, in a case such as this, the claim of immunity could be "effectively lost" when a plaintiff's allegations in avoidance of immunity were "erroneously permitted to go to trial." *Mitchell, supra* at 526. Accord-

ingly, but for *Newton,* we would conclude, on the clear and unambiguous language of the court rules, that, regardless of the basis for a lower court's order, whenever that order denies immunity to a governmental party, agency, official, or employee, it is a final order that may be appealed of right. MCR 7.202(6)(a)(v); MCR 7.203(A).

In this case, the court did not specify that it was ruling on Taylor's motion for summary disposition on the basis of governmental immunity, MCR 2.116(C)(7), and, in fact, the court noted that summary disposition was inappropriate because there were questions of fact. However, Taylor asserted that he was entitled to immunity and the court's ruling indisputedly rejected Taylor's immunity defense, MCL 691.1407, and was an order denying him governmental immunity. Because we are required to do so by *Newton,* MCR 7.215(J), instead of finding that we have jurisdiction to consider on appeal all the claims incident to this action, we have no choice but to consider the claims in this case as on leave granted, *Newton, supra* at 658-659, although we consider that approach both unnecessary and illogical.

A

With respect to the first half of plaintiff's first count, false arrest, plaintiff had to show that Taylor participated in an illegal and unjustified arrest and that Taylor lacked probable cause to do so. *Peterson Novelties, Inc v Berkley,* 259 Mich App 1, 18; 672 NW2d 351 (2003). The deposition testimony and documentary evidence in this case establish that Taylor had no participation whatsoever in plaintiff's arrest on July 22, 2000. At the time of plaintiff's arrest, Taylor was monitoring undercover officers' drug solicitations from his position inside an abandoned house several blocks

away from the location where Margosian and Lieutenant Brian Krutell, the acting Mt. Clemens police chief, had their encounter with plaintiff that led to his arrest.

False imprisonment, the second half of plaintiff's first count, involves "an unlawful restraint on a person's liberty or freedom of movement." *Peterson Novelties, supra* at 17, citing *Clarke v K mart Corp*, 197 Mich App 541, 546; 495 NW2d 820 (1992). "The elements of false imprisonment are '(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement.'" *Moore v Detroit*, 252 Mich App 384, 387; 652 NW2d 688 (2002), quoting *Adams v Nat'l Bank of Detroit*, 444 Mich 329, 341; 508 NW2d 464 (1993). The restraint must have occurred without probable cause to support it. *Peterson Novelties, supra* at 18.

In this case, no evidence suggests that Taylor participated in any manner in the transportation of plaintiff to jail on July 22, 2000, the booking of plaintiff, or the placement of plaintiff inside a jail cell pending his arraignment and bond hearing. According to plaintiff's deposition testimony, the officer (Krutell) who tackled him on the sidewalk of Gratiot Avenue detained him, placed handcuffs on him, and, later at the police station declined to consider the protestation of plaintiff's cosolicitor, Greg Nelson, that he had only obtained a cigarette from plaintiff. Plaintiff then spent approximately two days in jail before he posted a reduced bond on July 24, 2000. Plaintiff did not know Taylor, never saw him, and could not explain what involvement Taylor had in his case. Taylor's only involvement in plaintiff's detention occurred after plaintiff already had been jailed, when Taylor, the officer in charge of processing paperwork for all arrests by COMET during the weekend of

July 21-22, 2000, presented to a prosecutor the request for warrant authorization (RWA) against plaintiff, swore before a court clerk regarding the veracity of the information contained in the RWA or a similar felony complaint, and had plaintiff arraigned. Assuming that Taylor's actions after plaintiff's detention resulted, directly or indirectly, in plaintiff's continued confinement, the question becomes whether probable cause supported Taylor's presentation of the RWA against plaintiff.

"Probable cause involves a determination of both the historical facts and whether the rule of law as applied to the facts is violated." *Matthews v Blue Cross & Blue Shield of Michigan*, 456 Mich 365, 377; 572 NW2d 603 (1998). "[W]ant of probable cause is a question of law to be determined by the court. Where the facts on which the issue turns are in dispute, the question is for the jury." *Id.* at 381-382 (citation omitted). " 'To constitute probable cause . . . , there must be such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged.' " *Matthews, supra* at 387-388, quoting *Wilson v Bowen*, 64 Mich 133, 138; 31 NW 81 (1887). "Probable cause . . . is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians." *Peterson Novelties, supra* at 19.

After considering the many depositions, police reports, and other items of documentary evidence provided by the parties, we conclude that the totality of the circumstances surrounding plaintiff's interaction with Nelson during the early morning hours of July 22, 2000, provided a sufficient basis from which Krutell and Margosian had probable cause to arrest plaintiff for

solicitation of cocaine. According to Krutell, who in July 2000 was a twenty-two year police veteran and had worked on numerous occasions with COMET, at approximately 2:00 A.M. on July 22, he sat in an unmarked police car three blocks from the intersection where the undercover officers posed as drug dealers. The muffled sounds of a conversation drew Krutell's attention to plaintiff and a man on a bike, Gregory Nelson, who stood on the sidewalk between twenty-five and fifty feet away from the unmarked police car. The conversation quickly ended after plaintiff said something that Krutell could not decipher, and Krutell then heard Nelson reply, "I'll be right back."[5] Nelson rode his bike east toward the intersection where the undercover officers posed as drug dealers. For twenty-five or thirty seconds, plaintiff remained standing in the same spot on the sidewalk where he had encountered Nelson. Krutell then approached plaintiff, identified himself as a police officer, asked plaintiff for identification, frisked plaintiff for weapons, and asked plaintiff to sit down on the sidewalk until he could determine whether plaintiff had solicited the purchase of cocaine through Nelson.[6] Within a short time, sixteen-year state police veteran and COMET narcotics team leader Margosian appeared and informed Krutell that Nelson had attempted to purchase crack cocaine from the undercover officers, and that other officers had arrested Nelson. When Krutell relayed to Margosian what he had observed and

---

[5] As Krutell testified, he believed that, as Nelson rode away from plaintiff, he told plaintiff, "I'll be right back." Although plaintiff testified to the contrary that Nelson said, "Good lookin' out dog," the determination whether probable cause exists depends on the facts as the officer perceived them. *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996).

[6] Krutell inquired of plaintiff whether he had been drinking, and plaintiff replied that he had consumed six beers and was in the process of walking to his house.

heard between plaintiff and Nelson, Margosian directed Krutell to arrest plaintiff for solicitation to deliver cocaine.[7]

Under these undisputed circumstances showing plaintiff's brief encounter with biker Nelson at 2:00 A.M. as he walked through a high crime area known for drug activity, followed by Nelson's immediate solicitation of crack cocaine from the undercover officers, while plaintiff simply stood on the sidewalk where he had encountered Nelson, apparently awaiting his return, we conclude that well-experienced police officers Krutell and Margosian possessed a reasonable suspicion that plaintiff had agreed with Nelson to solicit cocaine from the undercover officers. *People v Levine*, 461 Mich 172, 185; 600 NW2d 622 (1999) (when considering whether particular circumstances give rise to probable cause to suspect the commission of a crime, the reviewing court must examine the officers' observations in light of their experience and training, not in a vacuum or from a hypertechnical perspective); *Peterson Novelties, supra* at 19. Taylor had no personal knowledge of these facts that tend to establish probable cause that plaintiff and Nelson had agreed to solicit the delivery of crack cocaine. But in light of the well-established proposition that an officer may have probable cause regarding a suspect's commission of a crime on the basis of the presumptively reliable information conveyed to him by other officers, Taylor possessed probable cause regarding plaintiff's guilt of solicitation on the basis of the information he received from Krutell and Margosian. *People v Mackey*, 121 Mich App 748, 753-754; 329 NW2d 476 (1982) (information received from a fellow officer may properly be used as a basis for a warrant affidavit,

---

[7] After plaintiff was taken to the police station, Krutell verified that Nelson was the same person on the bike that he had seen with plaintiff.

and when one police officer receives information from a fellow officer, the law assumes the source is credible); *People v Fuller*, 106 Mich App 263, 266; 307 NW2d 467 (1981).

Taylor testified that he did not fill out the RWA, which listed him as both the officer in charge of the case and the complaining witness, but that he swore to the veracity of the document's content, specifically that plaintiff and Nelson had "solicited an undercover officer for the purchase of cocaine."[8] When questioned regarding the source of his knowledge of the information to which he swore against plaintiff, Taylor expressed his disbelief that he had reviewed any of the police reports concerning plaintiff until his preliminary examination. Taylor then testified that he relied on the information he heard from Krutell and Margosian:

> *Taylor*: They said that [plaintiff] . . . solicited Mr. Nelson to go purchase cocaine. Mr. Nelson went down, picked— solicited the undercover officer. At that time they took off, Mr. Nelson, and that was when Lieutenant Margosian went back and arrested [plaintiff].
>
> *Defense counsel*: What is it [plaintiff] did?
>
> *Taylor*: I don't know what he did, other than the fact he may have provided money to Mr. Nelson to buy cocaine.
>
> *Defense counsel*: What did they tell you he did, and I want to know who they are?
>
> *Taylor*: All I know is Lieutenant Krutell and Lieutenant Margosian said he should be arrested. That's all I can say. I don't know what they said he did.

---

[8] After Taylor had testified regarding the RWA and the felony information, plaintiff's counsel asked Taylor the imprecise question, "Did you swear to *this* document for obtaining the warrant?" Accordingly, it seems that Taylor swore to either the facts in the RWA or the felony information. The felony complaint alleges that plaintiff solicited cocaine from Officer Langley, but does not refer to Nelson.

Taylor subsequently and repeatedly testified that he could not recall with specificity what Krutell or Margosian might have advised him that plaintiff had done before Taylor swore to plaintiff's participation in the drug solicitation. Taylor explained that he had no personal knowledge of plaintiff's actions at the time of the drug solicitation because he was in an "undercover house" "about four blocks away," and reiterated that he had relied on relevant information provided by Krutell, Margosian, and possibly Dailey.[9]

We conclude that no genuine issue of material fact exists that Taylor had probable cause to swear to the warrant against plaintiff on the basis of the presumptively reliable information he obtained from his fellow police officers because (1) Taylor recounted precisely the totality of facts relayed to him by Krutell and Margosian that amounted to probable cause that plaintiff had solicited drugs, (2) these facts strongly resembled the observations of Krutell and Margosian around the time of plaintiff's arrest, and (3) Taylor did not subsequently contradict the fact that he received the relevant information from Krutell and Margosian. Accordingly, the circuit court erred by denying Taylor's motion for summary disposition with respect to plaintiff's false imprisonment claim pursuant to MCR 2.116(C)(10).

B

In maintaining a claim of malicious prosecution, a plaintiff bears the burden of proving that (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or main-

---

[9] Taylor did not recall whether he received any relevant information from Dailey.

tained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Matthews, supra* at 378. The parties do not dispute that the criminal proceedings terminated in plaintiff's favor with the dismissal of the solicitation charge at his preliminary examination. Even assuming that Taylor may be deemed to have initiated or maintained the prosecution[10] against plaintiff, Taylor had probable cause to do so, and absolutely no evidence within the record gives rise to a reasonable inference that Taylor swore to the drug solicitation allegation against plaintiff "with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Id.* Taylor apparently believed in plaintiff's criminal culpability at the time that he swore to the drug solicitation allegation, but could not entirely recall the specific facts that formed probable cause with respect to plaintiff because, as the COMET officer in charge of the weekend drug operation, he swore to six or ten other warrants at the same time that he swore to the allegation against plaintiff, and all the warrants "blend[ed] together after a while." Because probable cause existed and plaintiff has presented no evidence that would give rise to a reasonable inference that Taylor initiated or maintained the prosecution against him with an improper purpose, the circuit court erred when it denied Taylor's motion for summary disposition of the malicious prosecution claim pursuant to MCR 2.116(C)(10).

---

[10] "[I]n Michigan, the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." *Matthews, supra* at 384. "Unless the information furnished [to the prosecutor] was known by the giver to be false and *was the information on which the prosecutor acted,* the private person has not procured the prosecution." *Id.* at 385 (emphasis in original).

C

Multiple reasons warrant summary disposition of plaintiff's count that Taylor intentionally inflicted emotional distress. To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff. *Moore, supra* at 389. "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003), quoting *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999). First, count VI of plaintiff's complaint fails to allege with specificity any actions by Taylor with intent or recklessness, and thus fails to state a valid claim for relief. MCR 2.116(C)(8). Second, because the evidence in this case indisputedly reflects that Taylor pursued an arrest warrant against plaintiff on the basis of presumptively credible information that he obtained from fellow officers Krutell and Margosian, which amounted to probable cause for plaintiff's arrest, as a matter of law he cannot be liable for intentional infliction of emotional distress. *Cebulski v Belleville*, 156 Mich App 190, 196; 401 NW2d 616 (1986) (observing, in support of its finding that a police officer could not be liable for intentional infliction of emotional distress arising from his proper issuance of a speeding ticket, that liability could not be based on the officer insisting on his legal right in a permissible way, even though he might have been aware that such insistence certainly would cause emotional distress).

II

Taylor next argues that the circuit court should have granted his motion for summary disposition of plaintiff's claims under 42 USC 1983. Taylor asserts that the undisputed facts establish his qualified immunity from plaintiff's allegations of unlawful arrest and supervisory liability. We again review de novo the circuit court's summary disposition ruling. *Spiek, supra* at 337.

According to 42 USC 1983, any person who experiences "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" because of the actions of another person acting "under color of any statute, ordinance, regulation, custom or usage, of any State" may file an action seeking relief against the party that caused the deprivation. "In a suit against an officer for an alleged violation of a constitutional right," however, the officer may invoke the defense of qualified immunity to avoid the burden of standing trial. *Saucier v Katz*, 533 US 194, 200; 121 S Ct 2151; 150 L Ed 2d 272 (2001).

In *Saucier*, the United States Supreme Court described as follows the standard for applying qualified immunity:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
>
> * * *
>
> . . . [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and

it ... serves to advance understanding of the law and to
allow officers to avoid the burden of trial if qualified
immunity is applicable.

   In this litigation, for instance, there is no doubt [of] ...
the general proposition that the use of force is contrary to
the Fourth Amendment if it is excessive under objective
standards of reasonableness. Yet that is not enough.
Rather, we emphasized ... "that the right the official is
alleged to have violated must have been 'clearly estab-
lished' in a more particularized, and hence more relevant
sense: The contours of the right must be sufficiently clear
that a reasonable official would understand that what he is
doing violates that right." *The relevant, dispositive inquiry
in determining whether a right is clearly established is
whether it would be clear to a reasonable officer that his
conduct was unlawful in the situation he confronted.*
[*Saucier, supra* at 201-202 (emphasis added; citations
omitted).]

Stated slightly differently, the plaintiff in a § 1983
action attempting to overcome qualified immunity
bears the burden of establishing that a "reasonable
official in the defendant['s] position could [not] have
believed that his conduct was lawful." *Cope v Heltsley*,
128 F3d 452, 459 (CA 6, 1997) (citations omitted).

The first consideration therefore involves whether,
taken in the light most favorable to plaintiff, the actions
of Taylor in swearing to the veracity of the RWA violated
plaintiff's constitutional rights. To justify the invasion
of an individual's Fourth Amendment right to remain
secure against unreasonable searches and seizures, a
government official generally must obtain a warrant
supported by probable cause. *People v Kazmierczak*, 461
Mich 411, 417; 605 NW2d 667 (2000).

Count VII of plaintiff's amended complaint asserts
that Krutell, Margosian, and Taylor violated his Fourth
Amendment rights by (1) "[d]irecting the arrest of
[p]laintiff knowing he had not committed any unlawful

act(s)," and (2) "[t]hereafter, intentionally, knowingly and willfully failing and/or refusing to notify the appropriate officials that [p]laintiff had not committed any act(s) or omission(s) that constituted a violation of the laws of the state of Michigan." With respect to the first allegation, the unrebutted deposition testimony of Krutell, Margosian, plaintiff, and Taylor establishes that Taylor was not involved in plaintiff's arrest on July 22, 2000. To the extent that the second allegation encompasses Taylor's swearing to the facts within the RWA, which presumably helped lengthen the term of plaintiff's allegedly false imprisonment in violation of the Fourth Amendment,[11] the undisputed facts establish that Taylor had probable cause to do so on the basis of the presumptively reliable information he received from Krutell and Margosian regarding plaintiff and Nelson's attempt to solicit drugs from the undercover officers.

Count IV of plaintiff's amended complaint asserts that "at a minimum, one of the [d]efendants implicitly authorized, approved or knowingly acquiesced in the unlawful conduct of each of the other [d]efendants, being subordinate officers, such unlawful conduct, acts and/or omissions that are more fully described herein." The unrebutted evidence indicates that both Taylor and Margosian occupied the status of lieutenants assigned

---

[11] If Taylor's action of swearing to the facts within the RWA did not prolong plaintiff's imprisonment and seizure in violation of the Fourth Amendment, plaintiff could not state a valid § 1983 claim merely on the basis that Taylor participated in a malicious prosecution of him. This Court has recognized the United States Supreme Court's determination that "a prosecution without probable cause is not actionable under § 1983 as a violation of substantive due process rights under the Fourteenth Amendment," and that "to prevail under § 1983, a plaintiff who is improperly prosecuted and arrested must show some independent violation of a right protected by the constitution or federal law." *Payton v Detroit*, 211 Mich App 375, 404; 536 NW2d 233 (1995).

to the COMET task force, both supervised narcotics teams, neither had supervisory authority over the other, and both answered to Commander Charles Schumacher, COMET's leader. Furthermore, no facts tended to establish that on July 22, 2000, COMET Lieutenant Taylor had any supervisory authority over Krutell, who also occupied the positions of lieutenant and acting chief of the Mount Clemens Police Department.

Under these undisputed circumstances, we conclude that the circuit court erred by denying Taylor's motion for summary disposition of plaintiff's § 1983 claims pursuant to MCR 2.116(C)(10).

Reversed.

SAAD, P.J., concurred.

BORRELLO, J. (*dissenting*). I respectfully dissent from the majority opinion in this matter because there are questions of fact that should proceed to the trier of fact. Accordingly, I would affirm the decision of the trial court for the reasons the trial court stated on the record.

I strongly dissent from the majority's attempt to enlarge the scope of this Court's jurisdiction. I additionally dissent because I believe that this Court correctly asserted the application of the court rules at issue in *Newton v State Police*, 263 Mich App 251; 688 NW2d 94 (2004).

The majority contends that when a trial court denies a motion for summary disposition on *any* basis where the defense of governmental immunity *could* be raised, this Court acquires jurisdiction to review *all* matters under MCR 7.203(A) and MCR 7.202(6)(a)(v). The majority states:

We do not believe that our Supreme Court intended the court rule to be read so restrictively that governmental

bodies would be *forced* through discovery and trial when-
ever their motion for dismissal is denied on grounds other
than MCR 2.116(C)(7), *merely because the plaintiff con-
tends that the governmental agency is not immune*. [*Ante* at
625 (emphasis added).]

Impliedly, if not outrightly stated, the majority be-
lieves that plaintiffs allege facts outside the scope of
governmental immunity simply to avoid governmental
immunity, and not because the cause of action is based
in law or fact. Whether intended or not, the clear
message of the majority is that this Court must now act
as a guardian against a perceived onslaught of frivolous
litigation that our trial courts are seemingly ill-
equipped to discover. Accordingly, I reject the majority's
contention that plaintiff is filing a frivolous claim
simply to avoid the defense of governmental immunity.
Even assuming an onslaught of frivolous litigation, the
trial courts—not this Court—are empowered to be the
initial adjudicators of such perceived frivolous claims.
However, the majority would have this Court become
the court of initial jurisdiction to decide matters that
may not have been raised at the trial court level, giving
rise to another implied belief of the majority—that this
Court should become a trier of fact. The concept of
questions of fact being tried by the trier of fact, and not
by panels of this Court, is still the jurisprudence of this
state.

Thomas Jefferson understood the problems inherent
when courts attempt to expand their statutory author-
ity when he wrote:

   Our judges are as honest as other men and not more so.
   They have with others the same passions for party, for
   power, and the privilege of their corps. Their maxim is
   *boni judicis est ampliare jurisdictionem* [good justice is
   broad jurisdiction], and their power the more dangerous
   as they are in office for life and not responsible, as the

other functionaries are, to the elective control. The Constitution has erected no such single tribunal, knowing that to whatever hands confided, with the corruptions of time and party, its members would become despots. It has more wisely made all the departments co-equal and co-sovereign within themselves. [Lipscomb & Bergh, eds, *The Writings of Thomas Jefferson* (Washington D.C.; Thomas Jefferson Memorial Ass'n, 1903-1904), vol 15, p 277, Letter by Thomas Jefferson to William C. Jarvis, 1820.]

This Court has taken great pains to distinguish among motions brought under MCR 2.116(C)(7), (C)(8), and (C)(10). *Wilson v Alpena Co Rd Comm*, 263 Mich App 141; 687 NW2d 380 (2004). Similarly, the panel in *Newton* stated:

> The plain language of these court rules, interpreted in a common-sense fashion, leads us to conclude that this exception applies only to situations where the denial of summary disposition is directly based on a finding that the moving party is not entitled to government[al] immunity and not to a situation where, although a claim of governmental immunity has been asserted, the trial court denies a summary disposition motion because the party opposing summary disposition has stated a sufficient factual case to avoid summary disposition—in other words, as in this case, where the motion is actually disposed of as a MCR 2.116(C)(10) motion rather than a (C)(7) motion. [*Newton, supra* at 257.]

The *Newton* Court understood that there are differences between C(7) and C(10) motions. The majority in this case would eliminate such distinctions. This Court in *Newton* correctly stated and decided the case, in part, on these distinctions. As this Court stated in *Newton, supra* at 259:

> In our opinion, the trial court did not make a legal determination concerning whether defendant was entitled to claim governmental immunity. Instead, the trial court

made a determination that there were genuine issues of material fact to be resolved by the trier of fact. Therefore, the appeal in this case was taken from a C(10) determination rather than a C(7) determination. The order from which defendant claimed an appeal was therefore not a final order under MCR 7.202(7)(a)(v) and MCR 7.203(A)(1). Accordingly, defendant was required by the court rules to file an application for leave to appeal rather than a claim of appeal.

Thus, where a trial court has not made a finding whether a defendant is governmentally immune, it is premature for this Court to do so. However, the defendants in *Newton* were not precluded from raising the defense of governmental immunity. They could have asked for this Court to decide the issue by filing an application for leave to appeal. Accordingly, I dissent.