# STATE OF MICHIGAN

# COURT OF APPEALS

KARL GREENE,

Plaintiff-Appellant,

and

GOOD SAMARITAN COMFORT
TRANSPORTATION, LLC,

Intervening Plaintiff,

v

CITY OF DETROIT,

Defendant-Appellee,

and

ERICK HARRIS,

Defendant.

UNPUBLISHED
January 19, 2017

No. 315754
Wayne Circuit Court
LC No. 12-002501-NI

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendant, the city of Detroit, in this no-fault action.[1] The trial court granted summary disposition in favor of defendant on the basis that plaintiff had failed to establish a genuine issue of material fact with respect to whether the injuries he sustained in the October 2011 accident affected his general ability to lead his normal life. We affirm.

Plaintiff argues that the trial court erred when it found that no genuine issue of material fact exists regarding whether he suffered a serious impairment of an important body function that

---

[1] Good Samaritan Comfort Transportation, LLC, and Erick Harris are not parties to this appeal.

-1-

affected his general ability to lead a normal life, and thus, erred when it granted defendant's motion for summary disposition.

We review a trial court's grant or denial of a summary disposition motion de novo. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A motion under MCR 2.116(C)(10) tests the factual support for a claim, *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004), and should be granted as a matter of law when "there is no genuine issue as to any material fact," MCR 2.116(C)(10). A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We reviews the pleadings, affidavits, depositions, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Walsh*, 263 Mich App at 621.

Generally, under the no-fault act, tort liability is limited for noneconomic losses, but there are several statutory exceptions. MCL 500.3135; *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). MCL 500.3135(1) provides: "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." A "serious impairment of body function" is further defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The Michigan Supreme Court has promulgated a three-part test in determining whether a person suffered a serious impairment of body function requiring: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195.

Defendant does not and did not contest that plaintiff created genuine issues of material fact on prongs one and two, and the trial court focused only on prong three when it made its ruling. Thus, at issue is whether plaintiff's injuries arising from the October 2011 accident have affected his general ability to lead a normal life. An impairment affects a person's general ability to lead a normal life if it has "an influence on some of the person's capacity to live in his or her normal manner of living," *id*. at 202, which requires a comparison of the person's life before and after the incident in question. *Id*. This is a subjective, case specific inquiry, which does not require a specific temporal showing or a "quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. Rather, there must be evidence showing "some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. at 202. This showing merely requires that the "person's general ability to lead his or her life has been *affected*, not destroyed." *Id*.

The undisputed evidence revealed that plaintiff had not worked since 1999 because he began having back problems and his knees "started giving out." Plaintiff regularly visited DRH Orthopedic Clinic complaining of knee pain in the year and a half leading up to the accident. In fact, on plaintiff's January 8, 2010 visit, he told his treating physician that he had been using a cane and a walker for the past eight years because he has a "significant time performing several activities of daily living including going up and down stairs, rising from a seated position, [and] bending to the floor." Eventually, plaintiff underwent knee replacement surgery on his right knee on February 8, 2010, and his left knee on October 11, 2010.

Despite plaintiff's surgery, he still suffered from excruciating pain. At his May 24, 2011 visit with his orthopedic physician, plaintiff scored his pain level at "15/10," and explained that "the pain [was] so severe that he [was] unable to sleep." Approximately a month later, at another visit with his physician, plaintiff claimed that he was unable to ambulate without a walker and could not "do things he wanted to [] do." Approximately a week before the October 2011 accident, plaintiff complained of knee pain and his physician scheduled knee revision surgeries, with the first occurring in October 2011.

Following the accident, which occurred on October 10, 2011, plaintiff's treating physician compared MRI results of his knees, neck, and back to previous x-rays conducted a few months prior to the accident, which revealed no significant irregularities. At most, the radiologist noted that plaintiff had an "exaggerated lordosis of the cervical spine," but opined that it was most likely degenerative in nature. An independent medical examiner evaluated plaintiff on January 11, 2012. The examiner "[did] not find any gross physical findings of cervical or lumbar radiculopathy on any objective testing" and opined that plaintiff's neck and back pain had been ongoing for many decades progressing in nature.

In comparing plaintiff's pre-October 11, 2011 life to his post-October 11, 2011 life, plaintiff failed to present evidence creating a genuine issue of material fact that his injuries from the October 2011 accident affected his general ability to lead his normal life. Prior to the accident, plaintiff was unemployed, using a walker "on a consistent basis," had trouble sleeping, and had trouble walking, getting dressed, and doing household chores because he was in "[p]ain all the time." Plaintiff testified that before the accident, his normal day usually consisted of watching television. After the accident, plaintiff is still unemployed, uses a walker, has trouble sleeping, struggles with household chores, and getting dressed. Plaintiff testified that he struggles with sitting down for long periods of time, but his normal day still consists of watching television. When questioned how often plaintiff engaged in his hobbies of sewing or playing basketball, he testified that he had not sewed in about a year and he had not played basketball in at least three years before the accident. Further, with respect to plaintiff's sex life, he admitted that he had engaged in sexual relations with at least two women since the accident and explained that he has not made any further efforts to have sex with other people.

Because plaintiff's post-October 11, 2011 accident life remains unchanged as he is still able to watch television and continues to live in pain, he failed to present any evidence that demonstrates that he was further limited by his injuries sustained in the October 2011 accident. Accordingly, plaintiff failed to satisfy the requisite serious impairment of a body function threshold as required under *McCormick* because the record evidence contradicts plaintiff's claim, and thus, the trial court properly concluded summary disposition was appropriate. See *Fuhr v Trinity Health Corp*, 495 Mich 869; 837 NW2d 275 (2013) (adopting the reasoning of the dissenting opinion in *Fuhr v Trinity Health Corp*, unpublished opinion per curiam of the Court of Appeals, issued April 16, 2013

(Docket No. 309877), p 6 (providing that summary disposition is appropriate when the record blatantly contradicts the plaintiff's self-serving deposition testimony).[2]

Because we conclude the trial court did not err in granting defendant's motion for summary disposition, it is unnecessary to address defendant's proposed alternative grounds for affirmance.

Affirmed.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray

---

[2] See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369-370; 817 NW2d 504 (2012) (explaining that an order issued by the Michigan Supreme Court that adopts the dissenting opinion in the Court of Appeals constitutes binding precedent).