*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

O'NEIL DEPRIEST SWANSON II and DIANNE J. SWANSON,

        Plaintiffs-Appellants,

v

BEN J. PARKER and MARSHALL OGAN,

        Defendants-Appellees,

and

THOMAS COLBURN, ROBERT MICHAEL HAYES, and ROBERT MENARD,

        Defendants.

UNPUBLISHED
December 10, 2025
11:23 AM

No. 373617
Washtenaw Circuit Court
LC No. 23-001295-CZ

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Plaintiffs, O'Neil and Dianne Swanson, appeal by right the trial court's order granting summary disposition in favor of defendants, Ben Parker and Marshall Ogan,[1] under MCR 2.116(C)(7) (immunity granted by law) and (C)(10) (no genuine issue of material fact). Plaintiffs argue that the trial court erred because there are genuine issues of material fact as to defendants' governmental immunity defense and plaintiffs' malicious prosecution claim. Because we conclude that plaintiffs have not shown a genuine issue of material fact on their malicious prosecution claim, we affirm.

---

[1] Three other defendants, Robert Hayes, Robert Menard, and Thomas Colburn, were previously dismissed by stipulation. Therefore, this opinion will use the term "defendants" to refer to Parker and Ogan.

# I. BACKGROUND AND FACTS

This malicious prosecution action stems from the 2021 criminal prosecution of O'Neil Swanson for improper disposal of a body after 180 days, MCL 750.160c(2)(b), because he allegedly failed to timely dispose of decedent DH's remains. Following the preliminary examination, the criminal case was dismissed for lack of probable cause.

The underlying facts are as follows. Plaintiffs, an African-American couple, allege that they became the owners and operators of Tri-County Cremation Services, LLC (Tri-County Cremation) on or about June 1, 2020. Defendants dispute this timeline somewhat, pointing to an October 2019 agreement to purchase the business via land contract between plaintiffs and Mary Fancher, the personal representative for the estate of its previous owner. Property records show that plaintiffs purchased Tri-County Cremation on March 6, 2020. And on or about March 11, 2020, Tri-County Cremation filed an application with the Department of Licensing and Regulatory Affairs (LARA), signed by Dianne Swanson, for approval of a "cemetery change of control."

When plaintiffs assumed control of Tri-County Cremation at some point in 2020, DH's body was being stored on its premises. DH had passed away on December 11, 2018, and was subsequently entrusted to Compassion Funeral Home & Cremation Service LLC (Compassion Funeral Home) and its manager, John Olszewski, Jr., and scheduled for burial. But Olszewski and Compassion Funeral Home did not bury or otherwise dispose of DH's remains. Instead, on March 25, 2019, DH's remains were transferred from Compassion Funeral Home to Tri-County Cremation, which, at the time, was controlled and managed by Fancher. Yet Tri-County Cremation, too, did not dispose of DH's remains, as it did not have the requisite permit for cremation.

On May 24, 2021, the Washtenaw County Health Department forwarded LARA an anonymous complaint it received about Tri-County Cremation. In response, on May 26, 2021, LARA conducted an inspection of the facility. Upon arrival, investigators—including Ogan, the manager of LARA's inspections investigation section—observed numerous deceased bodies awaiting cremation as well as a casket containing DH's remains. O'Neil Swanson, who was present, could not produce the requisite documentation for DH and several other decedents.

On June 3, 2021, Special Agent Robert Menard from the Michigan Department of Attorney General (DAG) obtained a warrant from a district court to search the premises of Tri-County Cremation; the affidavit in support of the search warrant was signed by Menard and the warrant request was authorized by Assistant Attorney General Robert Hayes. Parker, director of LARA's licensing division, was present when the search warrant was executed by the DAG.[2] During the search, the DAG found DH's remains, which were removed and taken to the local medical examiner.

LARA, during its investigation, became aware that O'Neil Swanson had an ownership interest in Tri-County Cremation. O'Neil Swanson's mortuary science license and the license held by his business, Swanson's Funeral Home, Inc., in Flint, had been revoked in 2018. To resolve

---

[2] LARA's regulation agents reported to Ogan, who was supervised by Parker.

related criminal charges, he had pled guilty in 2019 to felony conversion of prepaid contracts, MCL 328.232(1).

On June 4, 2021, LARA's Corporations, Securities & Commercial Licensing Bureau (CSCLB), through its director and cemetery commissioner, Linda Clegg, issued a notice and order to cease and desist, ordering Tri-County Cremation and plaintiffs to immediately cease further violations of the Cemetery Regulation Act, MCL 456.621 *et seq.* Specifically, the notice and order stated that Tri-County Cremation and plaintiffs had made false statements on their licensing application because they did not disclose O'Neil Swanson's ownership interest in Tri-County Cremation, that they were operating Tri-County Cremation without a valid registration, and that they had failed to timely and properly dispose of a dead human body in the business's possession.

Shortly thereafter on June 7, 2021, Ogan conducted another inspection of the Tri-County Cremation facility. Following its investigation, LARA's licensing division determined there were potential licensing violations and issued an investigative report, signed by defendants, that recommended a formal complaint, cease and desist order, summary suspension, and "criminal or referral to another agency." The licensing division later forwarded its recommendation to LARA's regulatory compliance division.

Not long afterward on September 27, 2021, the DAG authorized a felony complaint charging O'Neil Swanson with improper disposal of a dead body after 180 days, MCL 750.160c(2)(b), for failure to timely dispose of DH's remains. At the preliminary examination, Parker was subpoenaed to testify by O'Neil Swanson's defense counsel regarding the LARA investigation. At the close of the prosecution's proofs, AAG Hayes moved to add five additional counts of mutilation of a body, MCL 750.160. But the district court declined to bind over O'Neil Swanson on additional charges, instead dismissing the felony complaint for lack of probable cause.

LARA's licensing investigation concluded in January 2023, with plaintiffs entering into a consent order in exchange for dismissal of the cease and desist order. Plaintiffs agreed not to contest that they had completed the purchase of and assumed a controlling interest in Tri-County Cremation without first receiving a certificate of approval for a change of control. They also agreed to pay a fine and Dianne Swanson agreed to formally withdraw her application for change of control of Tri-County Cremation.

Later in 2023, plaintiffs brought this suit alleging malicious prosecution and violations of the Elliott-Larsen Civil Rights Act (ELCRA). Dianne Swanson asserted a related loss-of-consortium claim. Plaintiffs alleged that O'Neil Swanson, a Black man, was targeted for prosecution, while white individuals involved in the DH matter, including Fancher and Olszewski, were not criminally charged. Defendants countered that no one at LARA referred O'Neil Swanson for criminal charges, nor did LARA know who made the referral to the DAG. Instead, LARA made one criminal referral for funeral director Olszewski, who was primarily responsible for the disposal of DH's remains.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10), seeking dismissal of plaintiffs' malicious prosecution claim because defendants were entitled to governmental immunity and because plaintiffs failed to raise a genuine issue of material fact on

whether defendants initiated a criminal prosecution against O'Neil Swanson. After a hearing, the trial court agreed and granted summary disposition to defendants. This appeal followed.

## II. STANDARD OF REVIEW

This Court renews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "This Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

## III. ANALYSIS

Plaintiffs argue that they have demonstrated a genuine issue of material fact precluding summary disposition of their malicious prosecution claim.[3] We disagree.

A plaintiff in a malicious prosecution case must prove "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 378; 572 NW2d 603 (1998). Put differently, a plaintiff's burden is "to show that defendant instigated the investigation or continued it and that the prosecution was based on false information." *Id.* at 389. "A plaintiff's prima facie case against a private person requires proof that the private person instituted or maintained the prosecution and that the prosecutor acted on the basis of information submitted by the private person that did not constitute probable cause." *Id.* at 379.

In *Matthews*, the plaintiff was a dentist who was charged, tried, and ultimately acquitted of filing false healthcare claims and false pretenses with intent to defraud. *Id.* at 357-378. Following a tip on the defendant insurer's fraud hotline, the insurer had initiated an investigation of billing irregularities in claims submitted by the plaintiff. *Id.* at 371. The insurer's financial investigator provided his report to state police, who conducted their own investigation which led the prosecution to bring charges. *Id.* at 371-372, 374. Following his acquittal at a bench trial, the plaintiff filed an action claiming malicious prosecution against the insurer on the theory that the insurer's agents provided inaccurate information to the prosecutor. *Id.* at 376. Our Supreme Court

---

[3] Plaintiffs do not contest the dismissal of their ELCRA claim on appeal.

reversed the jury verdict in the plaintiff's favor, holding that the plaintiff did not prove that the defendant's agents instituted the criminal action or maintained it. *Id.* at 383, 387, 392.

In the present case, plaintiffs must show that there is a question of fact as to whether defendants initiated the criminal prosecution against O'Neil Swanson. See *id.* at 378. But, as defendants highlight, Parker and Ogan each denied under oath issuing a referral to the DAG to initiate criminal charges against O'Neil Swanson. During Ogan's deposition, Ogan explained that he does not decide who will be charged in criminal cases, nor does he recommend criminal charges. Likewise, Parker explained when he was deposed that LARA does not criminally prosecute, and he and his office do not recommend felony charges; instead, they make recommendations as to administrative or licensing violations. Parker stated that his agency's process is to send recommendations to the regulatory compliance division, which would then make a referral to a prosecuting authority if the division felt there could be a possible criminal violation of law. Echoing Parker and Ogan's denials, CSCLB director Clegg averred by affidavit that no one at CSCLB referred O'Neil Swanson to the DAG or local prosecutor's office for criminal charges. Instead, Clegg stated that the CSCLB issued a criminal referral to those entities as to Olszewski—not O'Neil Swanson—relating to its 2021 licensing investigation. And when Special Agent Menard was asked at his deposition who made the decision about whether and which charges to bring against O'Neil Swanson, Menard answered that the decisionmaker was AAG Hayes.

Plaintiffs counter that there is a question of fact as to whether the prosecuting authority, the DAG, exercised independent judgment, asserting that "there is no suitable record from the prosecuting attorney to verify independent decision making." But plaintiffs offer only "conjecture and speculation" to support this argument, which is insufficient to raise a genuine issue of material fact for trial. *Libralter Plastics*, 199 Mich App at 486. As best we can discern, plaintiffs suggest that the prosecutor's investigation was not independent because much of the supporting information came from LARA investigators. For example, plaintiffs emphasize that Parker provided information to Special Agent Menard about DH's remains. Similarly, plaintiffs emphasize Special Agent Menard's testimony that he received the majority, if not, all of the information supporting the search warrant from LARA investigators, including information about a previous investigation into O'Neil Swanson's funeral home in Flint. Plaintiffs also point to Parker's decision-making authority in the LARA investigation, as he testified that he has a role in determining whether licensing complaints should proceed.

But plaintiffs' reliance on defendants' role in the licensing investigation falls short of demonstrating their involvement in the criminal prosecution. As explained, defendants and CSCLB's director denied that they referred O'Neil Swanson for criminal charges, and no contrary evidence calls that testimony into question. The fact that defendants pursued a licensing investigation against plaintiffs and made related recommendations to LARA's regulatory compliance division does not support an inference that they initiated the criminal charges against O'Neil Swanson.

Moreover, there is no evidence in the record that the prosecutor did not conduct an independent investigation or make an independent decision. In *Matthews*, the Court determined that the prosecution resulted from an independent investigation by a state detective and a warrant that was authorized by the prosecutor in which the detective was the complainant. *Matthews*, 456 Mich at 383-384. Therefore, the prosecutor, not the defendant's agent, exercised independent authority to initiate the prosecution. *Id.* at 384. Here, too, Special Agent Menard conducted the

criminal investigation and swore to an affidavit in support of a search warrant, and AAG Hayes filed charges. Plaintiffs' argument that defendants were responsible for the criminal prosecution is not "deducible from [the facts] as a reasonable inference," but is instead mere conjecture insufficient to defeat summary disposition. *Libralter Plastics*, 199 Mich App at 486.

Plaintiffs also question whether defendants provided accurate information to the prosecutor. But "[u]nless the information furnished [to the prosecutor] was known by the giver to be false and was the information on which the prosecutor acted, the private person has not procured the prosecution." *Matthews*, 456 Mich at 384-385. Here, plaintiffs have not pointed to any information that defendants provided to the prosecutor that was false or that defendants knew to be false. As a result, plaintiffs have failed to demonstrate a genuine issue of material fact that defendants initiated the criminal prosecution. Consequently, plaintiffs' malicious prosecution claim fails, and the trial correct was correct to grant defendants' motion for summary disposition.[4]

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[4] Because we hold that plaintiffs cannot maintain their malicious prosecution claim under MCR 2.116(C)(10), we need not decide whether defendants are immune from suit under MCR 2.116(C)(7).