# STATE OF MICHIGAN

# COURT OF APPEALS

DINO A. GUSMANO and SHEILA GUSMANO,

       Plaintiffs-Appellants,

v

BARNEY'S AUTO SERVICES and BROWNIES
MUFFLER SERVICE, INC.,

       Defendants-Appellees.

UNPUBLISHED
December 20, 2016

No. 328865
Macomb Circuit Court
LC No. 2014-001992-NP

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

PER CURIAM.

Dino Gusmano was injured when the brakes in his work van failed. He and his wife filed suit against two automotive repair shops who had serviced the vehicle in the past. However, the only evidence the Gusmanos presented to support their claims was an unsigned, undated, un-notarized statement from a certified mechanic with opinions based on speculation rather than established facts. Given this evidentiary shortfall, we affirm the circuit court's summary dismissal of plaintiffs' claims against both defendants.

## I. BACKGROUND

In April 2013, Dino Gusmano was seriously injured in a motor vehicle accident. Gusmano was driving a 2003 Dodge Ram van owned by his employer, Anchor Safe. Gusmano attempted to stop at the intersection of 23 Mile and Schoenherr Roads in Shelby Township; he "hit the brakes, and they failed, going right to the floor." Gusmano drove into intersecting traffic and collided with another vehicle. "Brake fluid was found covering the ground under and near the truck where the accident occurred." A leak in the brake fluid line was deemed the cause of the malfunction.

In May 2014, Gusmano and his wife filed suit against two companies who had done repair work on the van's brakes: Barney's Auto Services and Brownies Muffler Service, Inc. Plaintiffs alleged that Barney's "installed refurbished brakes within the past year" and that Brownies "conducted repair and maintenance within the past year on the brakes." Plaintiffs made no specific allegations, simply accusing defendants of negligence in installing, repairing, and inspecting the brakes. Mrs. Gusmano's claims sounded in loss of consortium.

-1-

Barney's quickly sought summary disposition of plaintiffs' claims under MCR 2.116(C)(10). Barney's subpoenaed Anchor Safe's records regarding the van's upkeep. These showed that the last brake work performed by Barney's occurred on July 19, 2010, two years and nine months before the accident. The invoice provided, in relevant part:

**CALIPERS, FRONT BRAKE**        **Brake Capliers [sic] Overhaul Front** . . .

Part    Brake Fluid                            Brake Fluid

Part    4531 and 4532 (Qua)       BRAKE CALIPER KIT – FRONT . . .

At that time, the van's odometer read 96,238 miles. Anchor Safe requested the van be towed to Barney's following Gusmano's April 2013 accident. At that time, the vehicle's mileage was 149,140, a difference of 52,902 miles. The April 17, 2013 invoice described the work done, in relevant part, as follows:

**Job #2**                                          **Brake Line Leaking** . . .

Labor  Rate 6                              Work Requested – Brake Hose Leaking . . .

   Work Performed – R&R Brake Hose Left Front

Part                                             Brake Fluid . . .

Part    DOR H620917                    Brake Hose . . .

Barney's owner, John Barnhart, swore in an affidavit that *Brownies* had performed brake work on the van four times between Barney's installation of the front brake caliper kit and the accident. Barney's attached Brownies work orders to establish this fact. And Barney's post-accident work focused solely on the brake fluid hose, not the caliper kit. Given the passage of time, significant mileage, and intervening repairs, Barney's contended that it could not be liable for the brake malfunction and resultant damage.

In response, plaintiffs' counsel proclaimed that he had evidence to contradict Barney's work records and Barnhart's affidavit. Specifically, counsel claimed that he visited Barney's on May 19, 2014, and was shown a worksheet detailing additional brake work performed by Barney's close in time to the accident. Counsel implied that Barney's withheld information in its summary disposition motion. However, counsel provided no dates or details regarding the alleged brake work and provided no copy or picture of the worksheet. Rather, counsel promised to support the allegation through the Gusmanos' testimony.

The circuit court granted Barney's motion without a hearing. The court considered Barney's documentation about repairs done to the subject vehicle, as well as Barnhart's affidavit. The court emphasized that plaintiffs "failed to submit any evidence and merely indicated that [they] will testify as to certain matters at trial." This was insufficient to overcome summary disposition. Plaintiffs sought reconsideration and provided affidavits attesting that their attorney told them about the Barney's worksheet listing brake work close in time to the accident. The court denied this motion.

Brownies subsequently sought summary disposition as well. Brownies contended that the malfunction was caused by a leak in the 10-year-old brake line and as Brownies had never performed work on the brake line, it could not be found liable. In support of its motion, Brownies presented the deposition of John Szechowycz, part-owner of Anchor Safe. Szechowycz testified that Barney's told him the van's brakes failed because "the brake line broke." This was the brake line originally installed by the manufacturer of the 2003 van. Szechowycz indicated, "We've never had any work done on the brake lines by anyone."

Brownies supported its theory that the brake line was the cause of the malfunction through the affidavit of William King. King worked for Barney's and inspected the van immediately after the accident. He "found that a brake hose made of reinforced rubber had developed a hole which allowed brake fluid to leak from the vehicle." This particular hose "ran between the steel brake line and the brake caliper. The hole in the brake hose appeared to me to have developed from fatigue due to the age of the hose."

Brownies also presented its work orders for repairs done to the van. On November 30, 2012, Brownies installed a "right rotor," two "front pads," and a "clamp." No brake line work was done at that time. 2007, 2008, 2009, and 2012 repair orders showed that Brownies had replaced brake pads, rotors, brakes, calipers, and other non-brake-related parts over the years, but made no mention of any work affecting the brake line. And Eddie Rayborn, Brownies' owner and manager attested that his business "replaced the two front brake pads, the front-right rotor, and one clamp" on the van in November 2012, but had "never worked on the brake lines."

Plaintiffs retorted that Rayborn falsely claimed to be a certified mechanic; his license expired in 2000 and he had not recertified since. As Rayborn was not a certified mechanic, he could not be a certified brake specialist, hold himself out as one to the public, or perform brake repair work under the motor vehicle service and repair act. MCL 257.1305; MCL 257.1310. And Rayborn's statutory violations rendered Brownies financially liable. MCL 257.1336; MCL 1338. Plaintiffs argued:

15. In his affidavit, Eddie Rayborn stated that he replaced one rotor and attached one clamp.

16. He did not state where he attached the clamp.

They then presented a statement from Scott Flourey, a licensed mechanic with a specialty certification to work on brakes. Flourey asserted:

3. That I would never put one rotor on a vehicle, because of the wear and tear generated by the vehicle.

4. That I would never place a clamp on a brake line because it could pinch off the brake line and cause a leak in the brake line.

Brownies replied and reiterated that no records supported that it had ever worked on the van's brake lines and that Anchor Safe's owner admitted that no such work had ever been done. Brownies rejected plaintiffs' interpretation of Rayborn's affidavit, denying that Rayborn personally made repairs to the van's brakes and negating application of the statutes. Brownies

-3-

also criticized Flourey's statement about the repairs. Flourey never inspected the vehicle and therefore could form no opinion regarding the actual mechanism causing the brakes' failure. Moreover, even Flourey advanced no theory of how the specific repairs could have led to the particular hole in the brake line, raising only speculation based on a clamp placed in an unidentified location. Brownies further noted that Flourey's affidavit was "unsigned, undated, and contain[ed] no proof of service" and therefore could not be considered.

At the summary disposition hearing, Brownies' counsel further described the evidentiary shortfall in this case. Flourey attested that he would never place a clamp on a brake line because "it could produce . . . a hole in the brake line after pressure build-up." But the only evidence in this case was that fatigue caused by age led to the hole, not pressure buildup. Accordingly, even if a clamp had been placed on the brake line, it would not have led to this damage.

Plaintiffs' counsel retorted that the exact mechanism of the malfunction was not actually known. King stated his personal opinion that "the brake hose appeared to me to have developed from fatigue." Counsel insisted, "Appear is not a definite statement. Appear is a speculation." Plaintiffs' counsel also complained that he was unable to complete discovery (which closed on April 8, 2015) and depose the late-identified witnesses because he needed emergency open-heart surgery on April 3 and remained on leave for a month. As a result, counsel asserted he was unable to depose Rayborn or King to determine where the subject clamp had been placed.

The circuit court granted Brownies' motion to dismiss the action. The court summarized the evidence culled from Szechowycz's deposition, the work orders, and King's affidavit. The court declined to consider plaintiffs' opposing affidavit from Flourey because it was an "unsworn 'statement' " that did not comply with the court rules. Accordingly, plaintiffs failed to create any question of fact. In rendering judgment, the court accepted as true that Rayborn conducted repairs in violation of statute. However, the statute's penalty provisions were only triggered if damages resulted from the "alleged deceptive practice of holding himself out to be a certified brake mechanic." As the evidence did not support that Brownies' work led to the malfunction, the statute's penalties were inapplicable.

Plaintiffs subsequently remedied the defect in Flourey's statement and presented a signed, notarized copy. They sought to set aside the dismissal of their complaint. The court found no palpable error or new issue supporting relief.

Plaintiffs now appeal the dismissal of its claims.

II. STANDARD OF REVIEW

The circuit court dismissed plaintiffs' claims against both defendants for failure to create a genuine issue of material fact that could be considered at trial. We review de novo a lower court's summary disposition ruling. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to

judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher*, 300 Mich App at 139-140.]

## III. DISMISSAL OF CLAIMS AGAINST BARNEY'S

In relation to the dismissal of their claims against Barney's, plaintiffs contend that the circuit court should have considered whether Barney's committed fraud or misrepresented the repairs it had performed on the van based on plaintiffs' counsel's report that he observed documentation of additional brake work while visiting Barney's shop. The only evidence in this regard was the statement of plaintiffs' counsel. But a lawyer cannot serve as a witness in this fashion. Specifically MRPC 3.7(a) provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Plaintiffs attempted to circumvent this rule by attesting in affidavits that they would testify that their lawyer told them he saw the subject documentation. This is blatant hearsay. Plaintiffs desired to prove the truth of the matter asserted: that their lawyer saw records that contradicted the documentation produced during discovery. See MRE 801(c). Plaintiffs never argued that their testimony would fall into a hearsay exception allowing its admission. See MRE 802. "Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6).

What remained was evidence that Barney's last performed brake repairs on the subject van almost three years and 53,000 miles before the accident. That work consisted of installing a front brake caliper kit. The undisputed evidence established that the brake failure was caused by a leaking brake fluid line. As no evidence suggested that the brake line leak could have been caused by the caliper installation and as plaintiffs presented no admissible evidence to oppose Barney's summary disposition motion, the court committed no error.

## IV. DISMISSAL OF CLAIMS AGAINST BROWNIES

Plaintiffs' claims against Brownies center on a November 30, 2012 invoice indicating that a Brownies mechanic installed a single rotor, replaced two brake pads, and employed a "clamp" during brake repairs. Through the affidavit of Scott Flourey, which was defective when first filed, plaintiffs alleged that the replacement of a single rotor, rather than the symmetrical replacement of both front rotors, could lead to wear and tear to the vehicle. Plaintiffs did not directly assert that the installation of a single new rotor caused the wear and tear to the subject brake line. Alternatively, Flourey assumed that the clamp was placed on the brake line, despite that no evidence described the clamp's location. Use of a clamp on a brake line would cause pressure buildup and brake line rupture, Flourey opined.

Of import to plaintiffs' claims, Brownies' November 30, 2012 invoice does not identify the mechanic who performed the subject repairs. In his affidavit, Rayborn merely indicates that "Brownie's replaced the two front brake pads, the front-right rotor, and one clamp," without naming the responsible technician. As established by plaintiffs, however, Rayborn misrepresented in his affidavit that he was "a certified mechanic who is qualified to perform services and repairs on automobile brakes."

Plaintiffs contend that the court should not have admitted Rayborn's affidavit as he illegally performed brake work without a license. However, the court did not consider the substance of Rayborn's affidavit; it focused on Szechowycz's deposition, King's affidavit regarding his post-accident inspection of the brake system, and the various invoices and work orders of the two defendants. Accordingly, no relief can be granted in this regard.[1]

Plaintiffs further argue that the circuit court should have allowed them an opportunity to remedy Flourey's defective affidavit before it rendered judgment. Plaintiffs first presented its "Statement of Scott Flourey" on March 31, 2015, with its response to Brownies' summary disposition motion. Following the dismissal of their claims, plaintiffs presented a notarized statement from Flourey on June 22, 2015. The court denied plaintiffs' request for relief, stating: "And the court is convinced that Plaintiff[s] have not provided evidence of palpable error and have not presented new issues that were not previously addressed at the hearing. And to the extent that they have, these will not support their motion for reconsideration . . . ." Although brief, we conclude from this statement that the court did consider Flourey's newly notarized affidavit but found the contents insufficient to support plaintiffs' claims.

Plaintiffs also assert that summary disposition was premature as their attorney was unable to complete discovery. Discovery closed on April 8, 2015. More than three weeks before this deadline, Brownies filed its motion for summary disposition. Attached to that motion were the affidavits of Rayborn and King. This was not the first time plaintiffs learned of these witnesses. In its August 26 and 27, 2014 witness lists, Brownies identified Rayborn and King by name.

---

[1] The bigger concern is whether the contents of the November 30, 2012 invoice describing Brownies' latest brake work can be trusted given that Rayborn may have performed the repairs. Plaintiffs never raised this argument and we decline to consider it.

And Barney's attached an invoice naming King as the mechanic performing post-accident work to its August 8, 2014 summary disposition motion.

Despite that King's and Rayborn's identities and connection to this case were old news, plaintiffs insist that their attorney was on the cusp of preparing a motion to depose these witnesses "when he had to immediately enter Beaumont Hospital for open heart surgery" on April 3, 2015, a mere five days before the close of discovery. Accordingly, plaintiffs urge that the circuit court should have extended the discovery period. This claim is fatally flawed, however, as plaintiffs never filed a motion, or even orally requested an extension. Rather, plaintiffs' counsel stated his intent to file a motion for an extension to depose King and Rayborn, but never followed through. As such, we cannot fault the circuit court for failing to act.

Ultimately, plaintiffs failed to create a genuine issue of material fact for trial and the court properly dismissed their claims against Brownies. Plaintiffs theorized that the brake malfunction was caused by one of two mechanisms: wear and tear caused by replacing only one front rotor or the placement of a clamp on the brake line. Flourey's bald assertion that he would not replace only one front rotor is the only support for the first theory. Unfortunately, absolutely no evidence supports that uneven wear caused the malfunction. And plaintiffs admittedly could not support their second theory. As noted by their counsel at the summary disposition hearing:

> . . . Where was the clamp placed?
>
> I was going to do a deposition, but my illness stopped me from doing it. But, it states right here: a clamp. Because we didn't have an opportunity to do the deposition, we couldn't find out where the clamp was placed.
>
> Now, this clamp could have caused a brake line to explode. We have to find out where the clamp was placed.

Speculation is insufficient to overcome a motion for summary disposition. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

Accordingly, we affirm. Defendants, as the prevailing parties, may tax costs. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro