*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE A. KELLY,

        Plaintiff-Appellant,

v

LANA R. MCROBERT, individually and as personal representative ESTATE OF IRENE T. FERRILL,

        Defendant/Cross-Defendant-Appellee,

LAURA ECKER,

        Defendant/Cross-Plaintiff-Appellee,

and

HUNTINGTON NATIONAL BANK,

        Defendant-Appellee.

UNPUBLISHED
May 13, 2021

No. 353625
Muskegon Circuit Court
LC No. 19-004260-CH

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Denise A. Kelly filed suit to quiet title relating to her parents' marital home. For many years, Denise's parents had intended that their home or the proceeds from its sale would be divided evenly by their two children after the parents' deaths. Twenty years after the father's passing and shortly before the mother's death, however, the mother changed her mind, leaving the property to Lana R. McRobert alone.

Denise takes issue with the circuit court's interpretation of a series of deeds that granted first Denise and Lana, and later just Lana, a remainder interest in the property with a reserved "enhanced" life estate for Irene. The court properly interpreted deeds executed in 2002 and 2008 as giving Irene power to convey or sell the fee title to the property at any time during her life.

Irene employed that power in 2016 to remove Denise's remainder interest. As Denise no longer had an interest in the property, the court properly dismissed her quiet title action. We affirm.

I

Neil Calder Ferrill and Irene Theresa Ferrill had two daughters—Denise Ferrill Kelly and Lana Ferrill McRobert. In 1978, Neil and Irene executed a quit claim deed granting their home to Denise and Lana but retaining a life estate with the following language:

> *A lifetime estate will prevail for Neil Calder Ferrill & Irene Theresa Ferrill* and upon death of same Denise Ann Ferrill & Lana Rae Ferrill will dispose of this property or retain same or do whatever they want to with it as agreed by Denise Ann Ferrill & Lana Rae Ferrill. *Neil Calder Ferrill & Irene Theresa Ferrill as long as they both or either still live will have absolute power over this property.* [Emphasis added.]

The first sentence transferred a life estate to Neil and Irene with fee title to flow to Denise and Lana after their parents' deaths. A life estate "is an estate which is specifically described as to duration in terms of the life or lives of one or more human beings . . . ." Restatement Property, § 18, p 45. The creation of a life estate by deed is relatively simple; the grantor need say only something to the effect of "to A for his own life." *Id*. at 46. See also 2 Powell, Real Property, § 15.02[1], p 15-7. Generally, the holder of a life estate has the right to exclusive possession and to any financial benefits flowing from the land during his or her life. The life estate holder also has a duty to maintain the property, both physically and financially. See 1 Cameron, Michigan Real Property, § 7.8, pp 263-264; 2 Powell, Real Property, § 15.03, pp 15-35 – 15-44. See also Restatement Property, §§ 117, 119, pp 364-367, 371-373.

A grantor, however, may convey a life estate with additional duties or rights. Irene and Neil did so in the 1978 deed by granting themselves "absolute power over this property" "as long as they both or either still live." With this language, Irene and Neil intended to execute a "Lady Bird Deed," also known as an enhanced life estate. This type of conveyance is " 'an estate-planning tool to avoid probate.' " *In re Estate of Rasmer*, 501 Mich 18, 44 n 18; 903 NW2d 800 (2017), quoting *Black's Law Dictionary* (10th ed), p 503. Essentially, the landowners (usually aging parents) convey their home to a third party (usually their offspring) but retain "an enhanced life estate," keeping not only the power to use the property, but also the unusual powers to sell, mortgage, transfer, convey, and even waste the property. *Rasmer*, 501 Mich at 44 n 18; *Bill & Deanna Brown Trust v Garcia*, 312 Mich App 684, 687 n 2; 880 NW2d 269 (2015); *In re Tobias Estate*, unpublished per curiam opinion of the Court of Appeals, issued May 10, 2012 (Docket No. 304852), p 5;[1] Frank, *Ladybird Deeds*, 95 Mich Bar J 30, 30-31 (June 2016). As a general rule, grantors creating an enhanced life estate should spell out the absolute power conveyed to avoid any confusion.

---

[1] Unpublished opinions of this Court are not binding precedent, but can be instructive. MCR 7.215(C)(1); *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). The persuasiveness of *Tobias* is strengthened by this Court's reliance on it in *Bill & Deanna Brown Trust*.

Neil passed away nearly two decades later, on June 14, 1996. On September 3, 1996, Irene executed a new quit claim deed, providing:

> The Grantor, IRENE T. FERRILL, survivor of herself and her deceased husband, NEIL C. FERRILL, . . . quitclaims to DENISE A. KELLY, . . . and LANA R. McROBERT, . . . as joint tenants with full rights of survivorship, all of her interest in the following described property . . . .

> \* \* \*

> Grantor executes this Quit Claim Deed *pursuant to the express powers reserved by her in [the 1978 deed]*.

> *Grantor shall have the full use, benefit, rents and profits of the above-described premises so long as she shall live* and retain title thereto. [Emphasis added.]

In the 1996 deed, Irene employed the absolute power over the property reserved by her in the 1978 deed to reconvey a remainder interest to Denise and Lana, this time as joint tenants with full rights of survivorship. But Irene gave herself a standard life estate, granting herself only the basic rights that accompany that property interest.

In 2002, Denise and Lana executed a new quit claim deed, providing:

> DENISE A. KELLY, . . . and LANA R. McROBERT, . . . QUIT CLAIM to DENISE A. KELLY, . . . and LANA R. McROBERT, . . . [as] joint tenants with full rights of survivorship, the following described premises . . . .

> \* \* \*

> reserving, however, to IRENE T. FERRILL, a life estate in the foregoing described premises, to be measured by IRENE T. FERRILL's life, including but not limited to, retaining full rights of possession, benefit and use of the property, *and sole power to contract, convey, assign, sell, borrow, mortgage, pledge or otherwise encumber said property. . . .* [Emphasis added.]

Denise and Lana reconveyed their remainder interest to themselves. They also reinstated Irene's enhanced life estate. This time, the grantors used explicit language more commonly employed to convey the enhanced power to sell the fee title during Irene's life estate.

On May 12, 2008, Irene issued another Lady Bird, quit claim deed to the property, essentially reiterating the 2002 transfer:

Irene T. Ferrill . . . QUIT CLAIMS to Irene T. Ferrill . . ., Denise A. Kelly, . . . and Lana R. McRobert, . . . as joint tenants with full rights of survivorship, all other interest in the following described property . . . .

\* \* \*

Reserving and granting, however, to Irene T. Ferrill, a life estate in the foregoing described premises, to be measured by the life of Irene T. Ferrill including, but not limited to, retaining full rights of possession, benefit and use of the property, *and sole power to contract, convey, assign, sell, borrow, mortgage, pledge or otherwise transfer or encumber said property in fee simple*.

This deed is being recorded to clarify the ownership of the property as reflected on a deed dated September 3, 1996 and a deed dated September 30, 2002. *The intent to both these deeds and this deed is to retain a life estate and power of sale for Irene T. Ferrill. . . .* [Emphasis added.]

On June 22, 2016, Irene issued a new deed, cutting out Denise's interest. The reasons for Irene's acts are likely very important to Denise. However, Denise has never claimed that Lana exerted undue influence over their mother or that Irene lacked the capacity to change her estate plan. Accordingly, the reasons for Irene's 2016 deed are legally irrelevant. The 2016 Lady Bird, quit claim deed provided:

Irene T. Ferrill, . . . (Grantor), quit claims and transfers to Irene T. Ferrill, . . . for her lifetime, and then Lana R. McRobert, . . . (Grantee), all of her interest in the following described property . . . .

\* \* \*

Reserving and granting, however, to Irene T. Ferrill, a life estate in the foregoing described premises, to be measured by the life of Irene T. Ferrill, including, but not limited to, retaining full rights of possession, benefit and use of the property, and sole power to contract, convey, assign, sell, borrow, mortgage, pledge or otherwise transfer or encumber said property in fee simple. . . .

Irene passed away on March 4, 2018. Lana became the sole owner of the property. She sold and transferred the property to Laura Ecker on July 9, 2018, through a warranty deed. Ecker purchased the property with a mortgage loan through Huntington National Bank.

II

Denise filed suit to quiet title against Lana, Ecker, and Huntington. Denise asserted that the 1978 deed granted Denise and Lana each "a full 50% ownership interest in the Property, as tenants in common," while "reserv[ing] a life estate for Irene and Neil." In the 1996 deed, Irene "tried to re-convey 'all of her interest,'" but she only possessed a life estate. Following the 1996 deed, Denise and Lana "still equally owned the entirety of the Property as tenants in common," but then "also owned a life estate on Irene T. Ferrill's life as joint tenants with full rights of survivorship." Denise described the 2002 deed as merely altering Denise's and Lana's shared

interest from a tenancy in common to a joint tenancy with full rights of survivorship. Denise continued that the 2008 deed "only effectuated a transfer of" Irene's life estate back to herself, Denise, and Lana because that was the full extent of Irene's interest in the property at that time. And as Irene only had a life estate, the 2016 deed could only transfer that life estate to Lana as her separate property. With Irene's death, the life estate was eliminated. The property reverted to both Denise and Lana, Denise argued. Therefore, Lana's sale to Ecker without Denise's signature was invalid.

Laura Ecker filed a cross-claim against Lana for breach of the warranty of title. And all three defendants answered Denise's complaint by challenging her characterization of the deeds in the chain of title.

Soon after the filing, Lana, Ecker, and Huntington sought summary dismissal of Denise's quiet title action. Defendants examined the language of each deed in the chain of title and noted that since the 1978 conveyance, Irene and Neil had an enhanced life estate with absolute power to do anything they wanted with the property and its ownership. Defendants focused on the 2002 deed from Lana and Denise, back to themselves and Irene. That deed, defendants asserted, created an enhanced life estate as contemplated in Michigan Land Title Standard 9.3, which provides: "The holder of a life estate, coupled with an absolute power to dispose of the fee estate by inter vivos conveyance, can convey a fee simple estate during the lifetime of the holder, if the power is not exercised, the gift over becomes effective."[2] And Irene's subsequently executed 2008 deed "expressly clarified and confirmed" the intent to give Irene an enhanced life estate with absolute power over the property and its title. Ultimately, defendants argued, Irene had full power to execute the 2016 deed and transferred Lana a 100% fee simple interest in the remainder. When Irene died, Lana took full title and passed full fee simple title to Ecker. As such, defendants sought dismissal of Denise's quiet title action.

In the alternative, defendants contended that Denise was "equitably estopped from asserting Irene did not possess the right to convey the Property." Denise argued that the 2002 deed she and Lana executed "did not validly grant Irene the right to covey the property," invalidating Irene's 2016 deed eliminating Denise's remainder interest. Defendants asserted that "it would be inequitable to permit Denise to allege Irene did not possess the power to convey the Property when Denise expressly granted Irene" that power in the 2002 deed. Lana and Irene reasonably relied on Denise's promise and Irene exercised her reserved power.

Denise responded that summary disposition was actually warranted in her favor. She noted that the 1978 deed granted Irene and Neil a life estate with "absolute power over this property." This language, standing alone, was insufficient to create an enhanced life estate, Denise argued. The deed reserved a generalized power to Irene and Neil and therefore the normal powers

---

[2] The Michigan Land Title Standards were "prepared by the Land Title Standards Committee of the Real Property Law Section of the State Bar of Michigan and published by the Real Property Law Section." "The Michigan Land Title Standards is a series of selected statements of the law of land titles, as supported by applicable statutes and case law. Each Standard is a concise statement of a principle of law, accompanied by problems which illustrate the proper application of the principle." Michigan Land Title Standards, Preface (6th ed).

accompanying a life estate must have been intended. Given the limited interest held by Irene after the 1978 deed, Irene could only convey her life estate in the 1996 deed. This remained true for the 2002 and 2008 deeds, Denise continued; Irene could only transfer her interest in a standard life estate to the property. The 2016 deed then only terminated Denise's shared interest in Irene's life estate, passing the entirety of the life estate alone to Lana. Ultimately, Denise urged, Lana's claims failed because the 1978 deed did not include the language to create an enhanced life estate; i.e. a life estate with extra reserved power to convey title. As Irene thereafter possessed only a standard life estate, she could convey no greater interest. Every subsequent deed purporting to grant an enhanced life estate was therefore invalid.

Defendants retorted that the 1978 deed included a "reddendum clause" that "reserve[d] an enhanced life estate by granting Neil and Irene 'absolute power' over the property." By "suggest[ing] the reddendum clause simply outline[d] the scope of the standard life estate Neil and Irene have conveyed to themselves," Denise "render[ed] the final sentence of the conveyance mere surplusage." Specifically, "[a] a standard life estate by definition does not give a holder 'absolute power' over the property. This is exactly why enhanced life estates exist—to expand the limited power granted by a standard life estate to include the additional power to convey the property." The 1996 deed was not meant to change Irene's interest, only to remove her deceased husband as a title owner. But "Irene inadvertently created a standard life estate for herself . . . ." Denise and Lana acknowledged and corrected that error in the 2002 deed by conveying the remainder interest to themselves while reserving or excepting an enhanced life estate for their mother. Irene's 2008 deed "formally memorialize[d] the intention of the" 2002 deed. This was a valid recreation or rereservation of an enhanced life estate signed by all interested parties.

The court heard oral argument on the issue and took the matter under advisement, eventually granting summary disposition of the quiet title action in defendants' favor. The court explained its interpretation of each deed in the chain of title in turn:

> [I]f you look at the deed of 1978, the dad and the mother of these two women deeded the property to their daughters with allowing them a life estate and the power to be able to distribute the property any way they wanted.
>
> So basically as the owners, the dad and mom, even with their life estate, they basically could do whatever they wanted with that property because it was basically still theirs to do with what they wanted. If they had died, then the daughters would then take over and own that property.
>
> A deed of 1996, that was deeded from the mother and the estate of the father because the father had died, and that was deeded over again. At that time there was no life estate. It was deeded over; and in 2002, the two daughters then deeded it back so that the mother had that life estate again. I don't know if, for some reason or another, they - - the life estate was not placed in there and this was a correction of that so that the mother could have this back. So it went back to her. Both daughters turned that deed back to the mother and the two daughters with the life estate and the power to the mother to be able to do whatever she wanted with that property when she had that property.

In 2008 she also deeded - - the mother deeded to all three of them, with the mother having the life estate, the power to be able to do whatever she wanted to with that property. During her lifetime, she could sell it. She could give it away. She could do whatever she wanted to. She had that power, and she has maintained this power all the way through.

The deed of 2016, then, the mother then gave a quitclaim deed to herself and [Lana] with the life estate, and the power kept with the mother still. She could sell it. She could do what she wanted with it. It was hers basically; and if something happened, then it would become with the rights of survivorship or with the person on the deed with her, they would own that property.

In the deed in 2018, because the mother had passed away, [Lana] that was on the deed at the time, then sold that home to [Ecker] because she then owned that home free and clear because the only two people on it were Irene the mother, and [Lana].

In going through how these deeds are performed and who is on these, and what is saved for the mother all the way through is that the mom basically had the right to do whatever she wanted to with that property while she was alive.

In the 2016 deed she took that out of both sisters' names, put it in her and [Lana's]. And therefore, I - - with that indication and what the mother had intended in this case with these deeds, I am going to grant the Motion for Summary Disposition for the Defendants in this case.

As title was quieted in Lana's favor over Denise's claimed interest, Ecker's claim to title through the purchase from Lana was no longer clouded. Accordingly, the circuit court dismissed Ecker's cross-claim as well.

Denise now appeals.

III

Defendants sought summary disposition under MCR 2.116(C)(8) and (10). As the circuit court relied on documents beyond the pleadings, we consider the motion as granted under subsection (C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). We review de novo the court's summary dismissal of a plaintiff's complaint. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine

whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher*, 300 Mich App at 139-140.]

In construing a deed, courts must be guided by four principles outlined by our Supreme Court:

> (1) In construing a deed of conveyance, the first and fundamental inquiry must be the intent of the parties as expressed in the language thereof; (2) in arriving at the intent of parties as expressed in the instrument, consideration must be given to the whole of the deed and to each and every part of it; (3) no language in the instrument may be needlessly rejected as meaningless, but, if possible, all the language of a deed must be harmonized and construed so as to make all of it meaningful; (4) the only purpose of rules of construction of conveyances is to enable the court to reach the probable intent of the parties when it is not otherwise ascertainable.

> These four principles stand for a relatively simple proposition: our objective in interpreting a deed is to give effect to the parties' intent as manifested in the language of the instrument. [*Mich Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005), quoting *Purlo Corp v 3925 Woodward Ave, Inc*, 341 Mich 483, 487-488; 67 NW2d 684 (1954) (cleaned up).]

IV

The circuit court properly interpreted the 1978 deed as reserving an enhanced life estate for Neil and Irene. Reading the deed as a whole, the first sentence of the conveyance reserved Neil's and Irene's interest in the property for as long as they live. This created a life estate. If the final sentence of the conveyance merely conveyed a life estate as well, it would be surplusage. Interpreting the 1978 deed in that fashion would violate the principle that " 'no language in the instrument may be needlessly rejected as meaningless.' " *Carmody-Lahti*, 472 Mich at 370.

We acknowledge that Neil and Irene should have employed more specific language than simply reserving for themselves "absolute power." However, a standard life estate does not come with "absolute power," only an absolute right to use the property unimpeded by others. And the Michigan Bar has recognized that an enhanced life estate can be created with simple language that does not explicitly enumerate the additional powers granted. See Michigan Land Title Standard 9.3, Problem A (describing an enhanced life estate created by devising to a grantee "for her lifetime, to do with as she pleases, but on her death, if not previously disposed of, Blackacre shall be divided between" the remaindermen).

However, it ultimately does not matter what type of life estate the 1978 deed conveyed. The 1996 deed executed after Neil's death eliminated Irene's enhanced life estate, plain and simple. The 1996 deed provided, "Grantor shall have the full use, benefit, rents and profits of the

above-described premises so long as she shall live and retain title thereto." The plain language of this deed did not grant Irene the power to sell or convey fee title to the property, only the use of the property during her lifetime. This was a standard life estate.[3]

The 2002 and 2008 deeds restored Irene's enhanced life estate, or created a new enhanced life estate for Irene. Contrary to Denise's arguments, these deeds did not simply make Denise and Lana joint holders with Irene of a standard life estate for Irene's life. The 2002 deed was not executed by Irene, but rather by Lana and Denise. Lana and Denise had a future interest as joint tenants with rights of survivorship. They reconveyed to themselves that interest in the 2002 deed. They also granted Irene her existing life estate, but with additional powers. Lana and Denise explicitly granted Irene an enhanced life estate by "reserving" in Irene "a life estate . . . including but not limited to, retaining full rights of possession, benefit and use of the property, and *sole power to contract, convey, assign, sell, borrow, mortgage, pledge or otherwise encumber said property*." Lana and Denise could voluntarily limit their future interest in this manner. And the law is replete with examples of deeds creating enhanced life estates through such language. See, e.g., *Laberteaux v Gale*, 196 Mich 150, 151; 162 NW 968 (1917) (finding an enhanced life estate where the testator granted his wife a life estate "during which time she shall have full power to sell, deed, convey, invest and reinvest" title ownership of the property).

As the 2002 deed granted Irene an enhanced life estate, Irene had full authority to execute a new deed in 2008. That deed conveyed to Lana and Denise a future interest as joint tenants with full rights of survivorship and retained Irene's enhanced life estate with the power to dispose of the property at any time. Given Irene's interest in the property created by the 2002 deed, Denise's interpretation of the 2008 deed as merely conveying a shared interest in Irene's life estate goes against the plain language of the documents. Irene had more than a standard life estate and the plain language of the deed describes the conveyance. See 3 Restatement Property, 3d, § 18.1, cmt c, p 239 ("When a life estate is coupled with a power of disposition, the courts do not limit the exercise of the power to the disposal of the life estate itself.").

Again, as Irene possessed an enhanced life estate with the reserved power to convey the fee title to the property, Irene had full power and authority to execute the 2016 deed eliminating Denise's 50% remainder interest. Irene had absolute power to sell, convey, or otherwise affect the property's title. Irene exercised that power by again reserving an enhanced life estate for herself, and by conveying a full fee title interest in the remainder to Lana alone.

Upon Irene's death, Lana's remainder interest vested and she took fee title to the property. As the sole owner in fee simple, Lana had full authority to sell the home to Ecker. As Denise had no ownership interest in the property, either present or future, she was not entitled to interfere with

---

[3] Denise engages in mental acrobatics to read the 1996 deed as Irene conveying a share in her life estate to her daughters. The 1996 deed was a tool to notify the world of Neil's passing and the elimination of his interest in the property. Although the 1996 deed ultimately changed the nature of Irene's life estate, it was not intended to create a joint life estate between Irene and her daughters for the duration of Irene's life.

the sale or to quiet title in her favor. Accordingly, the circuit court properly dismissed her complaint.

We affirm.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher