*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

SAYLOR LAVALLII,

      Plaintiff-Appellee,

v

DR. MATTHEW R. JACKSON,

      Defendant-Appellant,

and

CENTRAL MICHIGAN UNIVERSITY, CENTRAL MICHIGAN MEDICAL STAFF, CENTRAL MICHIGAN HEALTH, JOHN BONAMEGO, GINO GUIDUGLI, BENJY WILBER, DR. GEORGE E. ROSS, DAVE HEEKE, and CENTRAL MICHIGAN UNIVERSITY BOARD OF REGENTS,

      Defendants.

UNPUBLISHED
January 13, 2022

No. 354833
Court of Claims
LC No. 18-000036-MK

---

SAYLOR LAVALLII,

      Plaintiff-Appellee,

v

DR. MATTHEW R. JACKSON,

      Defendant-Appellant.

No. 354899
Court of Claims
LC No. 18-000107-MZ

---

Before: SWARTZLE, P.J., and K. F. KELLY and REDFORD, JJ.

-1-

PER CURIAM.

In these consolidated appeals,[1] defendant, Dr. Matthew R. Jackson, appeals the trial court's order denying his motion for summary disposition under MCR 2.116(C)(7) and (8). We affirm the trial court's order denying Dr. Jackson's motion for summary disposition under MCR 2.116(C)(7), but decline to address its order denying summary disposition under MCR 2.116(C)(8) because we do not have jurisdiction over that issue and Dr. Jackson has not asked for leave to appeal that issue.

I. BACKGROUND

This case has already appeared before this Court in *Lavallii v Central Mich Univ*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2020 (Docket Nos. 346803; 346804). As this court explained in that case:

> Plaintiff alleged before the Court of Claims that, as a student at Central Michigan University (CMU), plaintiff played football for the school from 2012 through 2014. After plaintiff's third year, plaintiff consulted with the former team doctor and the coaching staff about concussion-like symptoms and the possibility of taking a nonmedical "redshirt" year and not playing during the 2015 season, with the understanding that he would resume playing the following year. The coaching staff and athletic department subsequently asked plaintiff to take a "medical, noncount redshirt year," meaning that plaintiff's scholarship would not count against the total number of scholarships available to the team. Plaintiff agreed to this plan, but he alleged that he was not informed that this plan required him to be medically disqualified for the 2015 season and medically cleared the following year. In the meantime, plaintiff treated with doctors not affiliated with CMU, who concluded that plaintiff was medically able to resume playing football. Plaintiff alleged that, armed with this information, he met with the new team doctor, Dr. Jackson, who did not examine plaintiff and, at the same time, refused to give plaintiff medical clearance to resume playing. Plaintiff was notified by the athletic director by e-mail dated June 17, 2016, that plaintiff remained medically disqualified from rejoining the football team on the basis of Dr. Jackson's recommendation. [*Id*. at 2.]

Dr. Jackson wrote a letter to Dave Heeke, the Central Michigan University "Associate Vice President/Director of Athletics," explaining why he declined to clear plaintiff medically to rejoin the football team. In that letter, Dr. Jackson stated that he reviewed plaintiff's medical records and history, discussed plaintiff's case with then-current staff who had provided medical care to plaintiff at Central Michigan University, and talked to plaintiff directly. Dr. Jackson considered all of this information before determining that he could not clear plaintiff medically to play football again.

---

[1] *Lavallii v Central Mich Univ*, unpublished order of the Court of Appeals, entered October 5, 2020 (Docket Nos. 354833; 354899).

Dr. Jackson concluded his letter by stating, "This assessment falls in line with current NCAA and The American Medical Society of Sports Medicine (AMSSM) medical best practice guidelines. Further, CMU Sports Medicines' guidelines reflect the above and are in place to ensure the health, safety and long-term well-being of our student-athletes, no matter the difficulty of the situation."

Plaintiff sued defendants alleging, in relevant part, that Dr. Jackson committed medical malpractice by failing to examine plaintiff adequately and clear him medically to play football again. Dr. Jackson moved for summary disposition, arguing that plaintiff failed to comply with the notice requirements of MCL 600.6431(1). The trial court granted summary disposition to Dr. Jackson and Central Michigan Health, but plaintiff appealed that decision to this Court. This Court affirmed the trial court's order granting summary disposition to Central Michigan Health, but reversed its order granting summary disposition to Dr. Jackson and remanded for further proceedings. *Lavallii*, unpub op at 3-7. After this Court's remand order, Dr. Jackson was the only remaining defendant. *Id*. at 7.

On remand, Dr. Jackson again moved for summary disposition, under MCR 2.116(C)(7) and (8), this time arguing that his decision to disqualify plaintiff medically from rejoining the football team was merely an "administrative" decision and, therefore, he was entitled to governmental immunity because the governmental-hospital exception did not apply. In the alternative, Dr. Jackson argued that he was entitled to summary disposition on the basis that the affidavit of merit plaintiff attached to his complaint did not comply with the requirements of MCL 600.2912d. The trial court denied Dr. Jackson's motion for summary disposition. This appeal followed.

## II. ANALYSIS

## A. JURISDICTION

Dr. Jackson claimed an appeal as of right in this case and plaintiff agreed with Dr. Jackson that we have jurisdiction over these appeals. But "[t]he question of jurisdiction is always within the scope of this Court's review." *Walsh v Taylor*, 263 Mich App 618, 622; 689 NW2d 506 (2004). Additionally, our jurisdiction "is generally limited to final judgments and orders." *Id*. See also MCR 7.203. In relevant part, MCR 7.202(6)(a) defines "final judgment" and "final order" as

> (*i*) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order;

> * * *

> (*v*) an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity.

Dr. Jackson claimed an appeal of right because the trial court denied his motion for summary disposition based on governmental-immunity grounds. Dr. Jackson is correct that we

have jurisdiction over his MCR 2.116(C)(7)-governmental-immunity claim because the trial court entered a "final order" when it denied his motion for summary disposition under MCR 2.116(C)(7). See MCR 7.202(6)(a)(*v*); MCR 7.203(A)(1). But Dr. Jackson has not explained how we have jurisdiction over his MCR 2.116(C)(8) claim that plaintiff's affidavit of merit was deficient. The trial court's order denying Dr. Jackson's motion for summary disposition did not "dispose[] of all the claims and adjudicate[] the rights and liabilities of all the parties." MCR 7.202(6)(a)(*i*). Additionally, an order denying a motion for summary disposition under MCR 2.116(C)(8) does not qualify as a final order under MCR 7.202(6)(a)(*v*). And none of the other definitions in MCR 7.202(6)(a) are applicable in this case. Thus, we do not have jurisdiction over Dr. Jackson's claim that the trial court erred by denying his motion for summary disposition under MCR 2.116(C)(8). See MCR 7.202(6)(a)(*v*); MCR 7.203(A)(1). See also *Hart v State*, 506 Mich 857, ___; 946 NW2d 285, 288-289 (2020) (CLEMENT, J., concurring); MCL 600.308(2)(c). Accordingly, our review is limited to Dr. Jackson's MCR 2.116(C)(7)-governmental-immunity claim.

## B. GOVERNMENTAL IMMUNITY

Dr. Jackson argues that the governmental-hospital exception, MCL 691.1407(4), applies to only medical-malpractice claims. He maintains that plaintiff's claim is one sounding in ordinary negligence, and, therefore, the exception does not apply in this case. Dr. Jackson additionally argues that the governmental-hospital exception does not apply because he did not "provid[e] medical care or treatment to a patient," MCL 691.1407(4), when he declined to clear plaintiff medically to rejoin the football team.

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. In reviewing a trial court's decision under MCR 2.116(C)(7), we consider the record evidence to determine whether the defendant is entitled to immunity. *Poppen v Tovey*, 256 Mich App 351, 353-354; 664 NW2d 269 (2003). "The facts as alleged in the complaint must be accepted as true unless contradicted by the submitted evidence, and the court must evaluate all the evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7)." *Reed v State*, 324 Mich App 449, 452; 922 NW2d 386 (2018) (cleaned up).

We also review de novo the application of a statutory exception to governmental immunity. *Reed*, 324 Mich App at 452. "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011).

"Under the governmental tort liability act, MCL 691.1401 *et seq.*, unless one of five exceptions applies, governmental agencies are immune from tort liability when they are engaged in a governmental function." *Wigfall v Detroit*, 504 Mich 330, 337; 934 NW2d 760 (2019). Plaintiff seeks to avoid governmental immunity by using the governmental-hospital exception, which provides, in relevant part, "This act does not grant immunity to a governmental agency or an employee or agent of a governmental agency with respect to providing medical care or treatment

-4-

to a patient . . . ." MCL 691.1407(4). "[I]t is the responsibility of the party seeking to impose liability on a governmental agency to demonstrate that its case falls within one of the exceptions." *Mack v Detroit*, 467 Mich 186, 201; 649 NW2d 47 (2002). Plaintiff maintains that the exception applies here because Dr. Jackson acted as plaintiff's doctor and medically cared for plaintiff, i.e., made a medical decision, when he refused to clear plaintiff to rejoin the football team.

Dr. Jackson argues on appeal that plaintiff cannot show that the governmental-hospital exception applies. First, Dr. Jackson argues that the exception applies only to medical-malpractice claims. This Court has held, however, that a previous version of the governmental-hospital exception permits medical-malpractice and ordinary-negligence claims. *Musulin v Univ of Mich Bd of Regents*, 214 Mich App 277, 286-287; 543 NW2d 337 (1995). The *Musulin* Court based its decision on the governmental-hospital exception's broad language waiving sovereign immunity for claims related to "ownership or operation of a hospital." *Id*. at 285. The Legislature amended the governmental-hospital exception after *Musulin* was decided, see 2013 PA 173, but these amendments do not preclude a plaintiff from bringing an ordinary-negligence claim under the governmental-hospital exception. Rather, the amendments limit the exception in other ways by requiring a plaintiff to be a "patient" whom "a governmental agency or an employee or agent of a governmental agency . . . provid[ed] medical care or treatment to." MCL 691.1407(4). A patient's injury must relate to medical care or treatment, but the Legislature did not expressly require the injury to be the result of medical malpractice. Had it intended to limit the exception to medical-malpractice claims, the Legislature could have specified, for example, that the exception applied to only circumstances in which a health professional was responsible for the medical care or treatment at issue. See *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 723-725; 965 NW2d 690 (2020). The Legislature did not do so, however, and we will not infer such a limitation from the statute. The governmental-hospital exception is not limited to medical-malpractice claims, and, consequently, we need not address which type of claim plaintiff has pleaded in this case.

We next turn to whether Dr. Jackson's conduct, considered in the light most favorable to plaintiff, falls within the governmental-hospital exception. As a reminder, the governmental-hospital exception provides, in relevant part, "This act does not grant immunity to a governmental agency or an employee or agent of a governmental agency with respect to providing medical care or treatment to a patient . . . ." MCL 691.1407(4). The governmental tort liability act does not define "medical care or treatment," so we turn to a medical dictionary to define the term. See *Woodard v Custer*, 476 Mich 545, 561; 719 NW2d 842 (2006). *Stedman's Medical Dictionary* (28th ed) defines "care" as "[i]n medicine and public health, a general term for the application of knowledge to the benefit of a community or individual patient or client" and "medical care" as "the portion of [care] under a physician's direction." It also defines "treatment" as "[m]edical or surgical management of a patient" and "medical treatment" as treatment "of disease by hygienic and pharmacologic remedies, as distinguished from invasive surgical procedures." *Id*. Thus, "medical care" is the application of a physician's medical knowledge for a patient's benefit, whereas "medical treatment" requires the application of a noninvasive remedy. By using the disjunctive word "or" the Legislature expressed a clear intention for either one to fulfill the governmental-hospital exception. See, e.g., *Richards v Richards*, 310 Mich App 683, 700-701; 874 NW2d 704 (2015).

-5-

Plaintiff does not allege that Dr. Jackson administered any medical remedies when he refused to allow plaintiff to return to the football team. Given this, plaintiff did not receive "medical treatment" from Dr. Jackson. But there is a question of fact on whether Dr. Jackson applied his medical knowledge to plaintiff's benefit when he refused to authorize plaintiff's return to the football team. Dr. Jackson insists that this was a purely administrative decision, but Dr. Jackson arguably made a medical determination that if plaintiff returned to the football team, the student-athlete faced an unacceptable risk of future brain injury. As one example, Dr. Jackson's letter to Heeke suggests that Dr. Jackson reached his decision by drawing on his own medical knowledge and the medical opinions of others familiar with plaintiff's case. Our review of the record confirms that, at this point in the litigation, there remains a question of fact as to whether plaintiff received "medical care" from Dr. Jackson.

Dr. Jackson additionally argues that plaintiff was not his patient. But Dr. Jackson was the team doctor for the Central Michigan University football team, of which plaintiff was a member. Additionally, Dr. Jackson's letter to Heeke appears to show that Dr. Jackson reviewed plaintiff's medical records, discussed plaintiff's case with other staff that treated him, and even discussed the issue with plaintiff. All of this was done before Dr. Jackson made the decision not to permit plaintiff to rejoin the football team. This evidence, combined with Dr. Jackson's status as the football team's doctor, creates a question of fact as to whether plaintiff was Dr. Jackson's patient when Dr. Jackson concluded that he could not clear plaintiff medically to rejoin the football team.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's order denying Dr. Jackson's motion for summary disposition under MCR 2.116(C)(7). We do not reach Dr. Jackson's MCR 2.116(C)(8) arguments because we do not have jurisdiction over that aspect of the trial court's order. Plaintiff, as the prevailing party, may tax costs under MCR 7.219.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ James Robert Redford