*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEORGE WHITNEY,

UNPUBLISHED
November 10, 2022

        Plaintiff-Appellee,

v

No. 357982
Washtenaw Circuit Court
LC No. 20-000064-NF

GRANGE INSURANCE COMPANY OF
MICHIGAN,

        Defendant-Appellant.

Before: MURRAY, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant, Grange Insurance Company of Michigan, appeals by leave granted an order granting partial summary disposition in favor of plaintiff, George Whitney, on the issue of whether plaintiff suffered a serious impairment of a body function caused by the at-issue motor-vehicle accident.[1] We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

On January 21, 2020, plaintiff filed his complaint arising from a motor vehicle accident that occurred on December 7, 2017, when the van he was driving was struck by a vehicle that failed to stop at an intersection.[2] In relevant part, plaintiff sought underinsured insurance benefits from defendant, the insurer of the van that plaintiff was driving. Plaintiff averred that he suffered serious and permanent injuries, including to his neck, back, chest, left shoulder, and left hand, as well as possible aggravation of preexisting conditions.

---

[1] *Whitney v Grange Ins Co of Mich*, unpublished order of the Court of Appeals, entered December 2, 2021 (Docket No. 357982).

[2] The driver of the vehicle that failed to stop had been a named defendant in this action, but was dismissed by stipulated order dated May 6, 2020 following a settlement being reached.

On February 8, 2021, plaintiff filed a motion for partial summary disposition on the issue of serious impairment of a body function under MCL 500.3135. Plaintiff explained that at the time of the accident, he was driving a vehicle owned by his employer and the driver's side was struck, and crushed, when the other vehicle ran a stop sign. Plaintiff went to the emergency room the day after the accident, on December 8, 2017, and was found to have two broken ribs (anterior left 5th and 6th ribs), and soreness in his left hand and chest. Plaintiff further explained that he had no primary care physician but eventually went to McLaren Industrial Health for pain in his chest, neck, right arm, left hand, and left hip, as well as muscle wasting in his right upper extremity. Plaintiff averred that he was eventually diagnosed with neck issues, including nerve impingement, stenosis, and disc herniation involving C4-C7—for which he underwent neck surgery in August 2018. Plaintiff averred that he remained disabled from his occupation as a carpenter and had been awarded social security disability, allegedly because of his accident-related injuries. Plaintiff alleged that there was no material factual dispute as to the nature and extent of his injuries, and thus, he was entitled to partial summary disposition under MCR 2.116(C)(10) on the issue whether he suffered a serious impairment of a body function caused by the accident. In support of his motion, plaintiff attached medical records from his visits to the emergency room, McLaren Industrial Health, and other medical providers, as well as his social security award letter and the transcript of his deposition testimony.

On May 12, 2021, defendant filed a response to plaintiff's motion and a request for judgment in defendant's favor under MCR 2.116(I)(2) because plaintiff sustained no serious impairment caused by the accident. Defendant noted that when plaintiff went to the emergency room the day after the car accident, he denied any head, neck, or back pain. He was diagnosed with rib fractures, took two weeks off of work for those to heal, and then returned to work and his regular activities. Plaintiff did not see a doctor again until months later, on March 19, 2018, and he claimed to notice weakness in his right arm. However, defendant argued, there was no proof that plaintiff's neck, arm, and headache issues are related to the accident. In other words, defendant argued, plaintiff had to establish there was no material factual dispute that his medical conditions were proximately caused by the accident and he wholly failed to do so. In fact, he returned to work full-time in January and to his regular activities without restrictions and had no need to see a physician for months. Then, when plaintiff sought medical treatment over three months later, the diagnostic reports only showed chronic, degenerative changes—not traumatic injuries. That is, the cervical MRI showed multilevel degenerative changes and a left hip MRI showed no significant findings. Plainly, there were no traumatic injuries identified. Although plaintiff had neck surgery in August 2018—despite a lack of significant symptoms—his surgery was related to chronic degenerative changes. Further, by April 2019, the surgeon noted that plaintiff had zero neck pain and he was released from care by July 2019. Defendant relied on plaintiffs' medical records, as well as a report from a physician who examined plaintiff with regard to his worker's compensation claim, Dr. Wilbur Boike, a neurologist. Dr. Boike concluded that it "would be extremely peculiar for [plaintiff] to have sustained significant cervical spine injuries in the December 7, 2017 motor vehicle accident and to have not experienced any consequences from that pathology for three months thereafter." Dr. Boike also could not definitively relate plaintiff's headache complaints to the accident. In summary, defendant argued, plaintiff failed to establish anything but a temporal connection between the accident and his health problems which was insufficient evidence of proximate cause; thus, plaintiff's motion for partial summary disposition must be denied and defendant was entitled to summary disposition. In support of its brief,

defendant attached several exhibits, including plaintiff's medical records and excepts from plaintiff's deposition testimony.

On May 14, 2021, plaintiff filed a reply to defendant's response in opposition to plaintiff's motion for partial summary disposition, arguing that defendant failed to raise a genuine issue of material fact on the issue of serious impairment. Plaintiff argued that his treating physicians related his medical conditions to the car accident and there was no evidence to the contrary. And defendant's reliance on Dr. Boike's report was misplaced because Dr. Boike could not conclusively determine the cause of plaintiff's injuries and their presentation; instead, he offered speculation and conjecture. In fact, plaintiff continued to receive worker's compensation benefits for the injuries he sustained in this motor vehicle accident. Accordingly, plaintiff argued, he was entitled to partial summary disposition on the issue of serious impairment of body function. In support of his reply, plaintiff attached records from the worker's compensation case manager, medical records, and disability certificates.

On May 20, 2021, after hearing oral arguments on plaintiff's motion for partial summary disposition on the issue of serious impairment of body function under MCL 500.3135, the trial court granted plaintiff's motion. The trial court explained its rationale as follows:

> First, the Court taking into account any and all legal and logical inferences that can be drawn from the evidence is supportive of the determination of a serious impairment. Specifically in the brief the diagnosis with regard to cervical nerve impingement, muscle atrophy, the wasting, cervical stenosis, anterior cervical - - I don't have to repeat what counsel both knows, a very detailed identification of a whole variety of medical issues which as the Court heard by way of argument believes there is a relationship with cervical injuries that the IME doctor specifically identifying the injury and putting some context to that injury even Dr. Boike who may testify. . . .
>
> And the argument that in reliance on part of Dr. Boike that the injury is not related to the auto accident I don't believe, at least based on this record, it's supportive of that request. Specifically under MCL 500.3135 on the issue of serious impairment of a body function must be objectively manifested. And I believe it is clearly as in most cases like this one can make the argument that the serious impairment is not objectively manifested and circumstances unlike this in which the evidence is frankly overwhelming from that standpoint. It's an impairment of an important body function. Clearly, the fact that the Plaintiff is unable to go to work based on determination of social security and workers' comp and not just relying on that sole issue but clearly the injuries that have been identified and set forth clearly identify what is in fact an important bodily function, and affects the injured person's general ability to lead his normal life. The evidence that he can't go to work even for light duty beyond any and other complaints that the Plaintiff may have as a result of injuries that are a result all lead the Court to the conclusion that there's no general issue of material fact and therefore no valid defense on the issue of the serious impairment of a body function. And as a result the Court will grant the motion.

After the trial court denied defendant's motion for reconsideration, defendant sought leave to appeal which this Court granted as set forth above.

On appeal, defendant argues that the trial court erred in granting plaintiff's motion for partial summary disposition because a genuine issue of material fact existed on the issue of proximate cause, i.e., whether plaintiff sustained a serious impairment of a body function that was caused by the motor-vehicle accident.[3]  We agree.

## II. ANALYSIS

We review de novo a trial court's decision on a motion for summary disposition.  *Spiek v Dept of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).  A motion brought under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Id*. The moving party must identify the matters that have no disputed factual issues, and has the initial burden of supporting its position with documentary evidence.  *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).  The party opposing the motion must then establish by evidentiary materials that a genuine issue of disputed fact exists.  *Id*.  After considering the documentary evidence submitted in the light most favorable to the nonmoving party, the court determines whether a genuine issue of material fact exists to warrant a trial.  *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).  "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  Summary disposition pursuant to MCR 2.116(I)(2) is properly granted if it is clear that "the opposing party, rather than the moving party, is entitled to judgment as a matter of law."  *Rataj v Romulus*, 306 Mich App 735, 747; 858 NW2d 116 (2014) (quotation marks and citation omitted).

This is a claim for underinsured motorist benefits.  Such a claim allows a plaintiff to obtain coverage from a defendant "to the extent that a third-party claim would be permitted against the [] at-fault driver." *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005).  Under the no-fault act, that means a plaintiff must prove noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle, as well as a threshold injury of death, serious impairment of a body function, or permanent serious disfigurement.  MCL 500.3135(1); *McCormick v Carrier*, 487 Mich 180, 192-193; 795 NW2d 517 (2010).  The primary dispute in this case is not whether plaintiff has a threshold injury, i.e., a serious impairment of a body function.  Plaintiff primarily claims that he suffered a neck injury and it appears that defendant does not contest that plaintiff has a cervical spine condition for which he had surgery.  Rather, defendant argued in the trial court and argues here on appeal that there is, at minimum, conflicting evidence on the issue of causation, i.e., whether the car accident caused plaintiff's degenerative cervical condition or aggravated a preexisting, degenerative cervical condition.

---

[3] Defendant also claims the trial court erred by relying on inadmissible evidence, including document's authored by a case manager related to plaintiff's worker's compensation claim and social security records.  However, it is not apparent from the trial court's ruling that such records were considered and relied upon in any regard, but particularly with regard to the court's conclusion on the issue of causation.  Accordingly, defendant's claim is without merit.

Proximate cause must be established in a negligence action. *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018). And the issue of causation is generally an issue for the factfinder unless there is no dispute of material fact. *Id.* "To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause." *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). In other words, establishing causation requires plaintiff to show that the other driver's conduct was a cause in fact and a legal cause of his injuries. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). Cause in fact "requires the plaintiff to present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Patrick*, 322 Mich App at 617 (citation and quotation marks omitted). Meanwhile, "legal causation" has been described as "that which operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Helmus v Mich Dep't of Transp*, 238 Mich App 250, 256; 604 NW2d 793 (1999). Mere speculation is insufficient to support a finding of causation and the fact that a condition follows an event in time, i.e., there is a temporal connection, is not in itself evidence of causation. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004); *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).

We conclude that the trial court erred when it held there was no genuine issue of material fact that plaintiff suffered a serious impairment of body function caused by the car accident, and thus, granted plaintiff's motion for partial summary disposition. There was, at minimum, conflicting evidence on the issue of causation, particularly with regard to plaintiff's cervical spine condition. A brief review of plaintiff's medical records follows.

The day after the accident, on December 8, 2017, plaintiff presented to the emergency room complaining of chest and left hand pain; he denied "headache, neck pain or any back pain." He also stated that he had no lower extremity injuries and was able to walk without difficulty. His neck and back examinations revealed full range of motion and there was no tenderness or swelling noted. X-rays revealed "fractures of the anterior left fifth and sixth rib." It appears that plaintiff's next medical visit was March 19, 2018, at McLaren Industrial Health, where he stated that he had some neck soreness, continued left hand pain, and "wasting of muscles" of the right shoulder, arm, and forearm, as well as left hip pain. It appears he was diagnosed with a left hip contusion and acute cervical strain. X-rays of the cervical spine on March 19, 2018 showed no fracture, but "grade 1 anterolisthesis of C4 and C5, likely degenerative in nature," and "moderate multilevel degenerative disc disease resulting in neural foraminal stenosis bilaterally at C3-C6 on the right and C4-C7 on the left appearing mild to moderate degree."

Plaintiff returned to the Industrial Health clinic on April 9, 2018, complaining of left hip and neck pain as well as weakness of his right arm with muscle mass loss. An MRI of plaintiff's left hip showed "no acute posttraumatic finding." An MRI of plaintiff's cervical spine performed on April 24, 2018 showed a "reversal of normal cervical curvature with multilevel degenerative changes as detailed above." Plaintiff returned to the Industrial Health clinic on April 26, 2018, and the diagnoses included "contusion of left hip" and "sprain of ligaments of cervical spine." Plaintiff saw Dr. Richard Ilka for an occupational medicine evaluation on May 7, 2018, and Dr. Ilka's assessment stated: "There are diffuse disc protrusions in the cervical spine and these may have caused the weakness in his right arm. It is unclear whether there has been an aggravation related to the motor vehicle accident. The signs of weakness in the right arm are suggestive of

cervical root impingement." Dr. Ilka's plan stated: "The need for both further evaluation and treatment is due to conditions that arose out of the motor vehicle accident, however his nicotine abuse was likely causative in his cervical spine spondylosis. It is not clear whether the accident has aggravated that in any way."

Plaintiff saw Dr. Geoffrey Seidel, a physical medicine and rehabilitation physician, on June 11, 2018. Physical examination revealed visible atrophy of plaintiff's shoulder girdle, arm, and forearm musculature; full flexion and extension of the neck with no active radicular component produced; full range of motion of shoulders and hips; normal gait; and complaints of pain in the wrist but full movement without swelling. The plan included electrodiagnostic testing of both upper extremities and lower extremities. On June 22, 2018, electrodiagnostic testing was conducted and the impressions included "RUE C6 radiculopathy vs plexopathy," as well as "sensory and motor peripheral polyneuropathy." On August 13, 2018, plaintiff underwent an anterior cervical discectomy and fusion surgery involving C4 to C7, performed by Dr. Kanwaldeep Sidhu. Apparently, by October 2018, plaintiff developed headaches and was given medication and referred for possible occipital nerve block. By January 2019, the surgeon indicated that "[t]here are no major restrictions at this stage."

On August 19, 2020, plaintiff saw Dr. Wilbur Boike, a neurologist, for an insurance medical evaluation related to his worker's compensation claim. At that time, plaintiff complained of having headaches, neck pain, and right arm weakness and tremor. After review of plaintiff's medical records and a physical examination, Dr. Boike's impressions included that plaintiff's "clinical course is confusing." Dr. Boike noted that plaintiff went to the emergency room the day after the accident—complaining only of chest pain and left-hand discomfort—and then did not seek medical treatment for over three months. Dr. Boike noted: "It seems highly unusual that [plaintiff] would not have sought medical evaluation during those months, if he had in fact, been experiencing severe headaches or progressive upper extremity weakness." Further, he opined: "It would be extremely peculiar for [plaintiff] to have sustained significant cervical spine injuries in the December 7, 2017 motor vehicle accident and to have not experienced any consequences from that pathology for three months thereafter." And Dr. Boike stated: "I cannot definitively relate his cervical spine pathology to the motor vehicle accident." Dr. Boike also did not identify any right arm tremor and concluded that, if it existed, it was not the result of any injury sustained in the accident. Moreover, Dr. Boike continued: "Given that headaches do not appear to have been part of his original constellation of complaints when seen in the emergency department, and given that he appears to have not sought medical evaluation for a number of months subsequent to the motor vehicle accident, I am not able to definitively relate his headache complaints to the motor vehicle accident."

During these proceedings in the trial court, plaintiff argued in his motion for partial summary disposition that no factual dispute existed—he suffered a serious impairment of body function caused by the accident. His medical conditions, including neck and right arm issues, were diagnosed and treated after the accident. However, plaintiff did not definitively establish a causal link between the accident and his medical conditions. To determine whether injuries were caused, or preexisting conditions aggravated, by the accident, we must look to medical expert opinions. Lay testimony from plaintiff stating that there is a causal link is insufficient to establish that there is a causal link between the accident and his claimed injuries. See, e.g., *Howard v Feld*, 100 Mich

App 271, 273; 298 NW2d 722 (1980).[4] The fact that plaintiff received medical treatment for his degenerative cervical spine condition—as it was termed in several medical reports—after the accident does not necessarily mean the condition was caused, or aggravated, by the accident. Plaintiff has directed us to no medical opinion that establishes a definitive causal link between the accident and his claimed injuries. While plaintiff self-reported that he suffered injuries in the accident and has various issues, none of his physicians present a definitive opinion on medical causation. As the moving party, plaintiff had the initial burden of supporting his causation argument with documentary evidence. See *Quinto*, 451 Mich at 362. And in considering a motion for summary disposition, evidence must be viewed in a light most favorable to defendant as the nonmoving party. See *Walsh*, 263 Mich App at 621. Plaintiff simply failed to establish that no factual dispute exists on the issue of causation for the trier of fact to resolve. Moreover, questions regarding preexisting conditions, and the potential aggravation of the same, are generally left to the jury. See *Wilkinson*, 463 Mich at 397-398.

And in granting plaintiff's motion for partial summary disposition, the trial court relied on the report by Dr. Boike to conclude that there was no genuine issue of material fact with respect to causation. But that report does not support the trial court's conclusion. Notably, the report repeatedly states that plaintiff's case was "confusing" and "peculiar," given that the onset of plaintiff's cervical spine condition was delayed several months after the accident. According to Dr. Boike, it was "highly unusual" that plaintiff would not have sought medical treatment for several months after the accident if he had in fact suffered from severe headaches and right arm issues. And it "would be extremely peculiar" for plaintiff not to have experienced any consequences, for months, if he had in fact sustained significant cervical spine injuries in the accident. Dr. Boike stated that he could not conclude that plaintiff's claimed headaches were definitively related to the accident and his right arm tremor, if it existed, was not caused by the accident. Dr. Boike appeared to give somewhat contradictory statements regarding causation of the cervical spine injury. He first stated, "I cannot exclude the possibility that [plaintiff] sustained a cervical spine injury," but then he concluded his report by stating, "I cannot definitively relate [plaintiff's] cervical spine pathology to the motor vehicle accident." This last statement is contrary to the trial court's conclusion that Dr. Boike's opinion directly linked the accident to the cervical spine injury. On summary disposition review, the court must construe the evidence in a light most favorable to the non-moving party. See *Walsh*, 263 Mich App at 621. Here, that means construing the evidence, including Dr. Boike's statements, in a light most favorable to defendant—which leads to the opposite conclusion of that reached by the trial court.

In summary, the trial court erred in granting plaintiff's motion for partial summary disposition on the issue of whether plaintiff sustained a serious impairment of a body function that was caused by the motor-vehicle accident. Plaintiff provided no medical opinion that establishes a definitive causal link between the accident and his claimed injuries. Considering Dr. Boike's somewhat equivocal conclusions, and other statements made in plaintiff's medical records, the issue whether plaintiff's claimed medical conditions were caused by the accident should be

---

[4] Cases decided before November 1, 1990 are not binding, but we may consider them persuasive authority. See *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

resolved by the trier of fact, and not as a matter of law. See *Wilkinson*, 463 Mich at 397-398; *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron